No. 25-2529

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

EXPRESS SCRIPTS, INC., et al.,
*Plaintiffs-Appellees,*

v.

RODNEY RICHMOND, in their official capacities as
Board Members of the Arkansas State Board of Pharmacy, et al.,
*Defendants-Appellants.*

On Appeal from the United States District Court
For the Eastern District of Arkansas
Nos. 4:25-cv-00520, 4:25-cv-00524, 4:25-cv-00561, 4:25-cv-00598
(Hon. Brian S. Miller)

ADDENDUM

TIM GRIFFIN
 Arkansas Attorney General

ASHER STEINBERG
 Senior Assistant Solicitor General

OFFICE OF THE ARKANSAS ATTORNEY
 GENERAL
101 West Capitol Avenue
Little Rock, AR 72201
(501) 682-1051
Asher.Steinberg@ArkansasAG.gov

# TABLE OF CONTENTS

*Document*                                                                                                    *Page*

Order (Doc. No. 73)
(4:25-cv-00520)................................................................................. Add. 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**EXPRESS SCRIPTS, INC.,** *et al.*                                    **PLAINTIFFS**

**v.**                        **CASE NO. 4:25-CV-00520-BSM**

**RODNEY RICHMOND,** *et al.*                                    **DEFENDANTS**

**ORDER**

Plaintiffs' motions for a preliminary injunction [Doc. Nos. 16 & 43; Doc. No. 12, Case No. 4:25-cv-00524-BSM; Doc. No. 12, Case No. 4:25-cv-00561-BSM] are granted and Arkansas Act 624 is enjoined from taking effect because it likely violates the Commerce Clause and it is likely preempted by TRICARE. Accordingly, defendants Rodney Richmond, Brian Jolly, Debbie Mack, Lenora Newsome, Clint Boone, Walter Lyn Fruchey, Harold H. Simpson, Beth Ann Davenport, John C. Kirtley, their agents and successors in office, and all persons acting in concert with them are hereby ordered to refrain from enforcing Act 624 until final disposition.

I. BACKGROUND

Pharmacy benefits managers (PBMs) "serve as intermediaries between prescription-drug plans and the pharmacies that beneficiaries use." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83–84 (2020) (reversing my decision in *Pharm. Care Mgmt. Ass'n v. Rutledge*, 240 F. Supp. 3d 951 (E.D. Ark. 2017)). For example, when "a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM to determine that person's coverage and copayment information." *Id.* at 84. Then,

after "the beneficiary leaves with his or her prescription, the PBM reimburses the pharmacy for the prescription, less the amount of the beneficiary's copayment. The prescription-drug plan, in turn, reimburses the PBM." *Id.* Some PBMs own their own pharmacies, and this vertical integration "hold[s] the promise of increasing [the pharmaceutical industry's] efficiency," *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984), while also creating "an inherent conflict of interest and an irresistible opportunity for [PBMs] to engage in predatory practices," *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 161 (5th Cir. 2007). For this reason, Arkansas lawmakers have enacted a number of PBM regulations in recent years. Act 624 is the latest and most aggressive one.

Act 624 states that, "[a] pharmacy benefits manager shall not acquire direct or indirect interest in, or otherwise hold, directly or indirectly a permit . . . for the retail sale of drugs or medicines in this state." In simple terms, Arkansas lawmakers have decided that they no longer want to allow PBMs to own or operate pharmacies in the state. Act 624 becomes effective on January 1, 2026, and plaintiffs, an industry trade association and various PBMs, are suing to stop it from taking effect. In the complaints, plaintiffs allege that Act 624 violates: (1) the Commerce Clause; (2) the Privileges and Immunities Clause; (3) the Supremacy Clause because it is preempted by (a) TRICARE, (b) ERISA, and (c) Medicare; (4) the Bill of Attainder Clause; (5) the Takings Clause; and (6) the Equal Protection Clause.

Plaintiffs are now moving for a preliminary injunction to prevent enforcement of Act 624 until final disposition. Having reviewed the briefs and conducted a hearing on July 23, the motions for a preliminary injunction are granted.

Add. 2

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008). Whether to grant such relief is within the sound discretion of the district court. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). A party seeking a preliminary injunction must prove that: (1) there is a likelihood of success on the merits; (2) it will suffer irreparable harm if the injunction is denied; (3) the harm to the movant, if the injunction is denied, outweighs the harm to the non-movant if the injunction is granted; and (4) an injunction is in the public's interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). "The third and fourth factors for a preliminary injunction—harm to the opposing party and the public interest—merge when the Government is the party opposing the preliminary injunction." *Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1018 (8th Cir. 2023).

Generally, a "fair chance" of prevailing on the merits is required to grant a preliminary injunction. *Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730–31 (8th Cir. 2008) (en banc). "Where a preliminary injunction is sought to enjoin the implementation of a duly enacted state statute, however, the moving party must make a more rigorous showing that it is likely to prevail on the merits." *Planned Parenthood of Ark. & E. Okla. v. Jegley*, 864 F.3d 953, 957–58 (8th Cir. 2017) (quotations omitted), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). This heightened standard "reflects the idea that governmental policies implemented through legislation or

3

regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Rounds*, 530 F.3d at 732 (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).

## III. DISCUSSION

Plaintiffs' motions for a preliminary injunction are granted for the following reasons.

A.    <u>Likelihood of Success on the Merits</u>

Plaintiffs' motions for a preliminary injunction are granted because they are likely to prevail on their Commerce Clause and TRICARE preemption claims.  Plaintiffs, however, are unlikely to prevail on their Privileges and Immunities, ERISA preemption, Medicare preemption, Bill of Attainder, Takings, and Equal Protection claims.

### 1. Commerce Clause

Plaintiffs are likely to prevail on their Commerce Clause claim and therefore their motions for a preliminary injunction are granted on that claim.

The Commerce Clause, which seeks to ensure free trade among the states, gives Congress the power to regulate interstate commerce.  U.S. Const. art. I, § 8, cl. 3; *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 330 (1944).  The negative implication of this power, known as the dormant Commerce Clause, prohibits states from unjustifiably discriminating against interstate commerce.  *Wyoming v. Oklahoma*, 502 U.S. 437, 453 (1992); *Hampton Feedlot, Inc. v. Nixon*, 249 F.3d 814, 818 (8th Cir. 2001).  If a state law overtly discriminates, the state must show, "under rigorous scrutiny, that it has no other means to advance a legitimate local interest."  *U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1067 (8th

4

Cir. 2000) (quoting *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392 (1994)). A state law that overtly discriminates is therefore presumed invalid. *U & I Sanitation*, 205 F.3d at 1068.

Act 624 appears to overtly discriminate against plaintiffs as out of state companies and the state has failed to show that it has no other means to advance its interests. This is true because section one of Act 624 specifically states that its purpose is to eliminate plaintiffs' "business tactics that have driven locally-operated pharmacies out of business." This phrase "artlessly discloses [the state's] avowed purpose to discriminate against interstate goods." *Dean Milk Co. v. City of Madison, Wis.*, 340 U.S. 349, 354 (1951). Although the state argues that it is merely targeting a form of business structure, this appears to only be a half-truth because the statute discloses that the state is also attempting to protect "locally-operated pharmacies" as opposed to just consumers and non-PBM affiliated pharmacies, including out of state non-PBM affiliated pharmacies like Walgreens.

I disfavor reviewing legislative history when interpreting the meaning of statutes because elected officials, whether federal or state, can junk up the record with meaningless drivel. *See Conroy v. Aniskoff*, 507 U.S. 511, 518–19 (1993) (Scalia, J., concurring). Legislative history, however, is one of the methods provided by the Eighth Circuit to determine the intent of state legislatures in Commerce Clause cases, so it is necessary in this circumstance. *See IESI AR Corp. v. Nw. Ark. Reg'l Solid Waste Mgmt. Dist.*, 433 F.3d 600, 604 (8th Cir. 2006) ("statements by lawmakers" and "the sequence of events preceding the regulation's adoption" are considered in determining whether a regulation has a

discriminatory purpose).  And a review of Act 624's legislative history indicates that it overtly discriminates against out of state companies.  Indeed, "the legislative history of [Act 624] is brimming with protectionist rhetoric."  *SDDS, Inc. v. State of S.D.*, 47 F.3d 263, 268 (8th Cir. 1995).  There are too many examples of this rhetoric to list in this order, and it would be a disservice to the strength of plaintiffs' claim to list only a few.

Furthermore, the burden Act 624 imposes on interstate "commerce is clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (citing *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443 (1960)). Arkansas already has laws in place that require PBMs to reimburse pharmacies at rates that are equal to or greater than what it costs those pharmacies to acquire a drug, *see* Ark. Code Ann. § 17-92-507; that forbid PBMs from paying in-state pharmacies less than the amount that the PBM reimburses a PBM affiliate for providing the same services, *see id.* § 23-92-506; and that prohibit PBMs from excluding or discriminating against pharmacies from a health benefit plan if the pharmacy was willing to meet the network's terms and conditions, *see id.* §§ 23-99-203 & 23-99-204.  Based on the evidence in the record, it appears that these laws are sufficient for the state to achieve its stated purposes of curtailing plaintiffs' business tactics and minimizing the conflicts of interest inherent in PBM-affiliated pharmacies.  Act 624's burden on interstate commerce is excessive because the "the [state] has available to it other less burdensome means to achieve its stated purposes."  *U & I Sanitation*, 205 F.3d at 1071.

*2. Privileges and Immunities Clause*

Plaintiffs are unlikely to prevail on their Privileges and Immunities Clause claim and therefore their motions for a preliminary injunction are denied on that claim.

The Privileges and Immunities Clause provides that: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. "Like the Commerce Clause, the Privileges and Immunities Clause 'was intended to create a national union.'" *Sarasota Wine Market, LLC v. Schmitt*, 987 F.3d 1171, 1184 (8th Cir. 2021) (quoting *Supreme Ct. of N.H. v. Piper*, 470 U.S. 274, 280 (1985)). The "Clause does not require that a State tailor its every action to avoid any incidental effect on out-of-state tradesmen." *McBurney v. Young*, 569 U.S. 221, 229 (2013). "Nor does the Clause 'preclude discrimination against nonresidents where (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objectives.'" *Sarasota Wine Market, LLC*, 987 F.3d at 1184 (quoting *Piper*, 470 U.S. at 284). Laws should be struck down "as violating the privilege of pursuing a common calling only when those laws [are] enacted for the protectionist purpose of burdening out-of-state citizens." *McBurney*, 569 U.S. at 227.

Plaintiffs are unlikely to prevail on their Privileges and Immunities Clause argument because "the Privileges and Immunities Clause has [never been interpreted] to protect corporations." *Tenn. Wine & Spirits Retailers Ass'n, v. Thomas*, 588 U.S. 504, 516 (2019). Their motions for a preliminary injunction are therefore denied on that claim.

7

### 3. Supremacy Clause

Plaintiffs are likely to prevail on their Supremacy Clause claim relating to TRICARE preemption but are unlikely to prevail on their claims relating to ERISA and Medicare preemption. Consequently, their motions for a preliminary injunction are granted on the TRICARE claim and denied on the ERISA and Medicare claims.

The Supremacy Clause provides "that the Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people, 'anything in the Constitution or Laws of any State to the contrary notwithstanding.'" *Testa v. Katt*, 330 U.S. 386, 391 (1947) (quoting U.S. Const. art. VI, § 2). "The purpose of the supremacy clause was to avoid the introduction of disparities, confusions and conflicts which would follow if the Government's general authority were subject to local controls." *United States v. Allegheny Cnty., Pa.*, 322 U.S. 174, 183 (1944), *abrogated on other grounds by United States v. City of Detroit*, 355 U.S. 466 (1958). Thus, "state laws that interfere with, or are contrary to, federal law" are invalid. *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 86 (2d Cir. 2006) (citation omitted).

Plaintiffs argue that Act 624 interferes with and is contrary to three federal laws: (1) TRICARE, 10 U.S.C. § 1071 *et seq.*; (2) the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*; and (3) Medicare, 42 U.S.C. § 1395 *et seq.*

a. TRICARE Preemption

Plaintiffs' motions for a preliminary injunction are granted on the TRICARE preemption claim because plaintiffs are likely to prevail on that claim.

8

The "federal TRICARE program provides health-insurance plans to uniformed service members of the United States armed forces." *In re Gillette Children's Specialty Healthcare*, 867 N.W.2d 513, 515 (Minn. Ct. App. 2015). TRICARE contains an express preemption clause that overrides any "law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods" that is "inconsistent with" or "necessary to implement or administer" the TRICARE program. 10 U.S.C. § 1103(a). Act 624 is expressly preempted by TRICARE only if it was the "clear and manifest purpose of Congress" to have TRICARE contract with PBM-owned pharmacies. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Act 624 may also be impliedly preempted by TRICARE if: (1) the scheme of TRICARE is so broadly written it is reasonable to infer that Congress left no room to supplement it with Act 624 ; (2) compliance with both TRICARE and Act 624 would be physically impossible; or (3) Act 624 stands in the way of accomplishing and executing the full purposes and objectives of Congress in enacting TRICARE. *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (plurality opinion).

Act 624 is both explicitly and impliedly preempted by TRICARE. Act 624 is explicitly preempted by TRICARE's "health care delivery" provision because Act 624 prohibits PBM-owned pharmacies from delivering healthcare to Arkansas patients. This prohibition is inconsistent with the TRICARE program that has existing contracts with some of the plaintiffs. Act 624 is also implicitly preempted by TRICARE because Act 624 impedes the TRICARE program's ability to accomplish the purposes for which Congress

9

enacted it.  This is true because Act 624 frustrates the "stability," "uniform[ity]," and "national" character of TRICARE. 10 U.S.C. §§ 1071, 1073(b), 1074g(a)(2)(E)(iii). Indeed, "[s]ubjecting [TRICARE] to the Arkansas [Act 624] license requirements would give the State's [pharmacy] board a virtual power of review over the federal determination of [who the Department of Defense can contract with] and would thus frustrate [TRICARE's] expressed federal policy." *Leslie Miller, Inc. v. State of Ark.*, 352 U.S. 187, 190 (1956) (per curiam).

b.  ERISA Preemption

Plaintiffs' motions for a preliminary injunction are denied on the ERISA preemption claim because plaintiffs are unlikely to prevail on that claim.

ERISA "is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans." *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1343 n.1 (8th Cir. 1991).  ERISA contains an express preemption clause that overrides "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  Courts apply a two-part inquiry in determining whether a state law relates to an employee benefit plan covered by ERISA: (1) Does the state law have a connection with ERISA?  (2) Does the state law reference ERISA? *See Wilson v. Zoellner*, 114 F.3d 713, 716 (8th Cir. 1997).  Act 624 does not reference ERISA, so the analysis is limited to whether Act 624 has an impermissible connection with ERISA.

Act 624 does not have an impermissible connection with ERISA.  This is true because

10

Act 624 does not regulate PBMs in their capacity as employee benefit plan administrators. Rather, it merely regulates the requirements for obtaining a retail pharmacy license. And while the effect of this regulation would certainly be "an influence that [would affect an ERISA] plan's shopping decisions," it would merely be an "indirect economic influence" that would "not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 659–60 (1995).

c. Medicare Preemption

Plaintiffs' motions for a preliminary injunction are denied on the Medicare preemption claim because plaintiffs are unlikely to prevail on that claim.

"Medicare is a federally funded and administered health insurance program for certain groups, primarily elderly and disabled persons." *In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig.*, 123 F. Supp. 3d 584, 602 (D.N.J. 2015) (citing *Heckler v. Ringer*, 466 U.S. 602, 605 (1984)). Medicare contains an express preemption clause that provides that its standards "shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency)." 42 U.S.C. § 1395w-26(b)(3). Medicare Part D focuses on prescription drug coverage for its beneficiaries. *See In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig.*, 123 F. Supp. 3d at 603. This coverage is based on a private market model, wherein Medicare contracts with private entities, known as Part D sponsors, to administer prescription drug plans. *See id.* Medicare Part D sponsors carry out their administrative function by subcontracting with pharmaceutical entities to provide drugs to

11

Add. 11

beneficiaries, including PBMs who provide drugs through mail order and pharmacies. *See id.* Sometimes, these PBMs provide Medicare beneficiaries with drugs through pharmacies that they own and sometimes they contract with non-PBM affiliated pharmacies. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1189–90, 1209 (10th Cir. 2023). State "laws are preempted as applied to Medicare Part D plans if and only if they either (1) regulate the same subject matter as a federal Medicare Part D standard (in which case they are expressly preempted), or (2) otherwise frustrate the purpose of a federal Medicare Part D standard (in which case they are impliedly preempted)." *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 972 (8th Cir. 2021).

Act 624 is not preempted by Medicare Part D for two reasons. First, Act 624 does not regulate the same subject matter as a federal Medicare Part D standard. This is true because Act 624 does not regulate Medicare Part D's pharmacy network composition; rather, it seeks to regulate who may be a pharmacy in the first place. And the Eighth Circuit has recognized that "the practice of pharmacy is an area traditionally left to state regulation." *Wehbi*, 18 F.4th at 972. Thus, the state's ability to regulate who may be a pharmacy in the first place is not claimed "for federal control pursuant to Medicare Part D." *Id.* Second, Act 624 does not frustrate the purpose of a federal Medicare Part D standard because there are plenty of non-PBM affiliated pharmacies with which Medicare Part D sponsors can contract. *See* Doc. No. 46-1 at 9.

### 4. Bill of Attainder Clause

Plaintiffs' motions for a preliminary injunction are denied on the Bill of Attainder

claim because they are unlikely to prevail on that claim.

The Bill of Attainder Clause provides that: "No Bill of Attainder . . . shall be passed." U.S. Const. art. I., § 9, cl. 3. The Supreme Court has interpreted this to mean "that legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution." *United States v. Lovett*, 328 U.S. 303, 315 (1946). Act 624 "is prohibited under the Bill of Attainder Clause if two elements are met: (1) [it] applies [to plaintiffs] with specificity; and (2) [it] imposes punishment." *Patchak v. Jewell*, 828 F.3d 995, 1006 (D.C. Cir. 2016).

Act 624 is not an unlawful bill of attainder because it does not apply to plaintiffs with specificity. Plaintiffs argue that while Act 624 does not explicitly name them, it does describe past conduct that operates only to designate plaintiffs. *See WMX Techs., Inc. v. Gasconade Cnty., Mo.*, 105 F.3d 1195, 1202 (8th Cir. 1997). Plaintiffs state this is true because the preamble of Act 624 refers to a Federal Trade Commission report that references the "Big 3 PBMs" and it covers any PBM that has acquired a direct or indirect interest in a pharmacy permit. The argument that this is a very narrow group is well taken; however, a law "is not made an attainder by the fact that the activity it regulates is described with such particularity that . . . [a] few organizations will fall in its purview." *WMX Techs., Inc.*, 105 F.3d at 1202. Act 624 does not attach to plaintiffs, rather, it attaches to the prohibition of PBMs having an interest in pharmacies. *See id.*

Additionally, Act 624 does not impose punishment according to the Supreme Court's

13

Add. 13

functional test because it "reasonably can be said" that Act 624 "further[s] nonpunitive legislative purposes." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 475–76 (1977). While Act 624 is tainted by its protectionist rhetoric so much as to render it unconstitutional under the Commerce Clause, it was not enacted in a wholly arbitrary manner. Indeed, the legislature believed that Act 624 would support patient access to prescription drugs and pharmacy services at fair prices. Act 624's enactment to facilitate this support for patient access can reasonably be characterized in a prospective sense rather than as a punishment for PBMs' past conduct in a retrospective sense.

### 5. Takings Clause

Plaintiffs' motions for a preliminary injunction are denied on their Takings Clause claim because plaintiffs are unlikely to prevail on that claim.

The Takings Clause states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause provides a simple, per se rule: The government must pay for what it takes. *Glow in One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1375 (8th Cir. 2022) (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021)). When the government imposes regulations that restrict an owner's ability to use its own property (as plaintiffs' claim is being done regarding their brick-and-mortar pharmacies) courts balance "factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Cedar Point Nursery*, 594 U.S. at 148. "The Takings Clause is not a means for federal courts to second-guess the legislature's choices about the best mechanisms

to achieve what are undeniably public policy goals." *Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuno*, 604 F.3d 7, 19 (1st Cir. 2010).

While the first two *Cedar Point Nursery* factors weigh in favor of Act 624 being an unconstitutional taking, the third factor tips the scale against it being a taking. This is true because the Arkansas legislature enacted Act 624 to "adjust[] the benefits and burdens of economic life to promote the common good." *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124 (1978). While this enactment is flawed under the Commerce Clause and Supremacy Clause for the reasons stated above, it would be an overreach to use the Takings Clause as an additional reason to strike down Act 624 because it would be an impermissible second-guess of the legislature's public policy goals.

### 6. Equal Protection Clause

Plaintiffs' motions for a preliminary injunction are denied on their Equal Protection Clause claim because plaintiffs are unlikely to prevail on that claim.

The Equal Protection Clause "provides that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *MSM Farms, Inc. v. Spire*, 927 F.2d 330, 332 (8th Cir. 1991) (quoting U.S. Const. amend. XIV, § 1). "A corporation . . . is a 'person' under the equal protection clause." *Id.* (citing *Pembina Consolidated Silver Mining & Milling Co. v. Pennsylvania*, 125 U.S. 181, 189 (1888)). Economic measures "run afoul of the equal protection clause only when 'the varying treatment of different groups of persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.'" *Id.* (quoting *Kadrmas v.*

15

Add. 15

*Dickinson Pub. Schs.*, 487 U.S. 450, 463 (1988)). Indeed, states "are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Thus, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with" the Equal Protection Clause. *Id.* at 303–04.

Plaintiffs are unlikely to prevail on their Equal Protection Clause claim for the same reason that Act 624 is not a bill of attainder: it is not wholly arbitrary.

B.    Irreparable Harm

Plaintiffs will suffer irreparable harm if a preliminary injunction is not issued because the "threat of unrecoverable economic loss" qualifies as irreparable harm. *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996). If Act 624 were to take effect, plaintiffs would suffer great economic loss in the state. And plaintiffs would not be able to recover from that economic loss if it was eventually determined that Act 624 is unconstitutional because defendants are entitled to sovereign immunity. Because plaintiffs cannot recoup any potential financial loss through a damages award because of defendants' immunity, Act 624 is enjoined from taking effect. *See Missouri v. Trump*, 128 F.4th 979, 996 (8th Cir. 2025).

C.    Balance of Equities and Public Interest

The balance of equities and public interest also favor plaintiffs. No harm is caused

16

Add. 16

when defendants are enjoined from enforcing an unconstitutional law; therefore, the balance favors plaintiffs. *See Rodgers v. Bryant*, 301 F. Supp. 3d 928, 937 (E.D. Ark. 2017), *aff'd*, 942 F.3d 451 (8th Cir. 2019). And the public interest favors plaintiffs because it is "always in the public interest to prevent the violation of a party's constitutional rights." *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)).

## IV. CONCLUSION

For these reasons, plaintiffs' motions for a preliminary injunction are granted and Arkansas Act 624 is enjoined from taking effect.

IT IS SO ORDERED this 28th day of July, 2025.

UNITED STATES DISTRICT JUDGE

17