# In the United States Court of Appeals for the Eighth Circuit

EXPRESS SCRIPTS, INC., ET AL.,

*Plaintiffs-Appellees*,

v.

RODNEY RICHMOND, ET AL.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Arkansas
Nos. 4:25-cv-00520, 4:25-cv-00524,
4:25-cv-00561, & 4:25-cv-00598
The Honorable Brian S. Miller, District Judge

**BRIEF OF THE ARKANSAS STATE CHAMBER OF COMMERCE/ASSOCIATED INDUSTRIES OF ARKANSAS AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEES AND AFFIRMANCE**

Andrew M. London
Kristyn Bunce DeFilipp
Marilyn J. Icsman
Maya Levine
Foley Hoag LLP
155 Seaport Blvd
Boston, MA 02210
tel: 617.832.1000
fax: 617.832.7000
alondon@foleyhoag.com
kbuncedefilipp@foleyhoag.com
micsman@foleyhoag.com
mlevine@foleyhoag.com

*Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, Amicus Curiae Arkansas State Chamber of Commerce/Associated Industries of Arkansas states that it is a non-stock 501(c)(6) organization and as such has no parent corporation. Nor is there any publicly-held company that owns ten percent or more of the Arkansas State Chamber of Commerce/Associated Industries of Arkansas.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF INTEREST OF AMICUS CURIAE ..........................................1

INTRODUCTION .........................................................................................2

ARGUMENT ................................................................................................5

    I.      Act 624 Will Harm Arkansas Business and Discourage Economic Investment.........................................................................................5

    II.     Act 624 Will Burden Employers that Offer Health Benefit Plans to Their Employees..................................................................................10

    III.   Arkansas Businesses Rely on Free and Equal Access to Out-of-State Markets. ...........................................................................................13

CONCLUSION............................................................................................19

CERTIFICATE OF COMPLIANCE...............................................................21

CERTIFICATE OF SERVICE .......................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bibb v. Navajo Freight Lines*
359 U.S. 520 (1959) ...............................................................................19

*Dep't of Revenue v. Davis*,
553 U.S. 328 (2008)................................................................................19

*Express Scripts, Inc. v. Richmond*,
No. 4:25-CV-00520-BSM, 2025 U.S. Dist. LEXIS 143385 (E.D.
Ark. July 28, 2025) ...................................................................................5

*H.P. Hood & Sons, Inc. v. Du Mond*,
336 U.S. 525 (1949)................................................................................15

*Hughes v. Oklahoma*,
441 U.S. 322 (1979)................................................................................15

*Pharm. Care Mgmt. Ass'n v. Mulready*,
78 F.4th 1183 (10th Cir. 2023) ...............................................11, 12, 13

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970)...............................................................................5, 6

*R & M Oil & Supply, Inc. v. Saunders*,
307 F.3d 731 (8th Cir. 2002) .................................................................4, 5

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
592 U.S. 80 (2020)..................................................................................13

*SDDS, Inc. v. South Dakota*,
47 F.3d 263 (8th Cir. 1995) ......................................................................4

*West v. Kansas Natural Gas Co.*,
221 U.S. 229 (1911) ...............................................................................19

*West Lynn Creamery, Inc. v. Healy*,
512 U.S. 186 (1994)................................................................................19

**Statutes**

29 U.S.C. § 1144(a). .......................................................................................13

2025 Ark. Act 624, § 17-92-417(c)(1)(A) .................................................7

**Other Authorities**

Adam Bruns, *The Fantastic Four*, *Arkansas Economic Development Guide 2025*, Site Selection Mag., https://siteselection.com/the-fantastic-four/ (last visited Jan. 30, 2026) ........................................14

Anna Reuter, *Companies Are Investing in Arkansas*, Site Selection Mag. (2022), https://siteselection.com/companies-are-investing-in-arkansas/ (last visited Feb. 4, 2026)..................................................14

Arkansas, *WORLD POPULATION REV.*, https://worldpopulationreview.com/states/arkansas (last visited Feb. 3, 2026) ...............................................................................15

Ark. Dep't of Hum. Servs., *Long Term Care Facility Search*, https://humanservices.arkansas.gov/divisions-shared-services/provider-services-quality-assurance/long-term-care-facility-search/ (last visited Feb. 4, 2026). ........................................8

Benjamin Hardy, *Update: CVS and Express Scripts Sue Arkansas over Law Banning PBMs from Owning Pharmacies*, Ark. Times (May 29, 2025, 12:43 PM), https://arktimes.com/arkansas-blog/2025/05/29/express-scripts-sues-arkansas-over-new-law-banning-pbms-from-owning-pharmacies ...................................8

Casey B. Mulligan, *The Value of Pharmacy Benefit Management*, Nat'l Bureau of Econ. Rsch. (July 2022) .......................................7

*Citizen's Guide-Arkansas's Fortune 500 Companies*, Univ. of Cent. Ark., Ark. Ctr. for Research in Econ., https://uca.edu/acre/citizens-guide-arkansass-fortune-500-companies (last visited Jan. 30, 2026)..................14

*CVS Arkansas Locations*, CVS Health, https://www.cvs.com/store-locator/cvs-pharmacy-locations/Arkansas (last visited Jan. 30, 2026) ...............................................................................6

Delaney Van Wilpe, *Arkansas Tops List of Most Popular States People Moved to in 2025*, 5NEWS ONLINE, https://www.5newsonline.com/article/news/local/arkansas-tops-list-most-popular-states-people-moved-2025/527-5e76a6bc-9734-4c99-9e78-e594b1402a45 ...................................................................3

Dwain Hebda, *Maintaining Momentum: Arkansas' Business, Tourism Communities Look to Stay on a Roll*, Ark. Money & Pol. (Jan. 20, 2026), https://armoneyandpolitics.com/arkansas-business-tourism-communities/ .........................................................................3

Ed Gruver, *Mechanicsburg Site First Nationally for Walmart's Expanded Pharmacy Delivery*, CENT. PA. BUS. J. (Sept. 23, 2025) https://www.cpbj.com/mechanicsburg-site-first-nationally-for-walmarts-expanded-pharmacy-delivery/ .......................................17

Emily Crowe, *Walmart Ups Ante on Prescription Delivery*, PROGRESSIVE GROCER (Sept. 23, 2025), https://progressivegrocer.com/walmart-ups-ante-prescription-delivery; ...........................................................................17

Frank Seo & Mark S. Goodman, *Rural Profile of Arkansas 2025: Social & Economic Trends Affecting Rural Arkansas*, Univ. of Ark. Sys. Div. of Agric. Coop. Extension Serv. Pub. No. MP585 (2025), https://www.uaex.uada.edu/publications/pdf/MP585.pdf (last visited Feb. 4, 2026)...................................................................8

Grocery Gap Atlas State Data, *Grocery Gap Atlas: Mississippi*, https://grocerygapatlas.rafiusa.org/state/28 (last visited Feb. 4, 2026) ..............................................................................16

Grocery Gap Atlas State Data, *Grocery Gap Atlas: Oklahoma*, https://grocerygapatlas.rafiusa.org/state/40 (last visited Jan. 30, 2026) ..............................................................................16

Kim Souza, *The Supply Side: Walmart Sees Growth in Optical, Pharmacy Businesses*, TALK BUS. (Feb. 19, 2025), https://talkbusiness.net/2025/02/the-supply-side-walmart-sees-growth-in-optical-pharmacy-businesses/.........................................16

*Leadership Arkansas 2025 Mid-Year Report*, Ark. Bus., https://www.arkansasbusiness.com/article/leadership-arkansas-2025-mid-year-report (last visited Jan. 30, 2026) ...........................................9, 14

Maia Anderson, *How the Arkansas PBM ban may affect pharmacy access in the state*, HEALTHCARE BREW (May 12, 2025), https://www.healthcare-brew.com/stories/2025/05/12/arkansas-pbm-ban-pharmacy-access ...................6

Mark Crawford, *Is Healthcare Part of the Facility Location Decision?*, Area Dev. (Nov. 2012), https://www.areadevelopment.com/laboreducation/november2012/healthcare-a-business-location-consideration-16161555.shtml (last visited Feb. 4, 2026) .......................................................................10

Mattingly TJ, Hyman DA, Bai G. Pharmacy Benefit Managers: History, Business Practices, Economics, and Policy. *JAMA Health Forum.* 2023;4(11):e233804. doi:10.1001/jamahealthforum.2023.3804.............................................8

Michael Pakko, *Arkansas GDP: 2025Q3*, ARK. ECONOMIST, https://arkansaseconomist.com/arkansas-gdp-2025q3/ ......................................2

Michael Tilley, *Arkansas Again Ranks First in GDP Growth with 5.1% Fourth Quarter Rise*, TALK BUS. (Mar. 28, 2025), https://talkbusiness.net/2025/03/arkansas-again-ranks-first-in-gdp-growth-with-5-1-fourth-quarter-rise/................................................................2

Peter Miscovich, *Locations That Promote Employee Health and Well-Being Coming to the Forefront*, Area Dev. (Q1 2022), https://www.areadevelopment.com/workplace-trends/q1-2022/locations-that-promote-employee-health-and-well-being.shtml (last visited Feb. 4, 2026).............................................10

*Pharmacies Ranked by Rx Market Share in the U.S.*, STATISTA, https://www.statista.com/statistics/734171/pharmacies-ranked-by-rx-market-share-in-us/ (last visited Feb. 3, 2026) ..............................................16

Ron Starner, *Entrepreneurship: Arkansas Is Fertile Soil For Growing Businesses*, *Arkansas Economic Development Guide 2025*, Site Selection Mag., https://siteselection.com/entrepreneurship/ ..............................14

*State Labor Force Hits Record Levels as More Arkansans Seek Jobs*, ARK. DEP'T OF COM. (Jan. 27, 2026), https://commerce.arkansas.gov/state-labor-force-hits-record-levels-as-more-arkansans-seek-jobs/ ..............................................2

Tess Vrbin, *Third Federal Lawsuit Challenges Arkansas' Restrictions on Pharmacy Benefit Managers*, ARK. ADVOC. (June 10, 2025), https://arkansasadvocate.com/2025/06/10/third-federal-lawsuit-challenges-arkansas-restrictions-on-pharmacy-benefit-managers/ .....................6

Tyson Foods, Inc., *Facts About Tyson*, https://ir.tyson.com/about-tyson/facts/default.aspx (last visited Feb. 4, 2026) ..........................................18

*Tyson Foods, Inc., Sec 10-K Report*, Trading View (Nov. 12, 2024), https://www.tradingview.com/news/tradingview:165f98f0f3feb:0-tyson-foods-inc-sec-10-k-report/ ...........................................18

Tyson Foods, Inc., *Tyson Foods Reports First Quarter 2026 Results* (Feb. 2, 2026), https://ir.tyson.com/news/news-details/2026/Tyson-Foods-Reports-First-Quarter-2026-Results/default.aspx ...................................18

*Walmart Expands Pharmacy Central Fill Operations with Opening of Largest Facility Yet in Frederick  Maryland*, WALMART (May 22, 2025), https://corporate.walmart.com/news/2025/05/22/walmart-expands-pharmacy-central-fill-operations-with-opening-of-largest-facility-yet-in-frederick-maryland .....................................................16

Walmart Inc., *Location Facts: United States,* https://corporate.walmart.com/about/location-facts/united-states *(last visited Feb. 4, 2026)* ..........................................................16

U.S. CENSUS BUREAU, *Congressional Districts of the 118th Congress: Arkansas*, https://www2.census.gov/geo/maps/cong_dist/cd118/st_based/CD118_AR.pdf..............................................................................6

<u>**STATEMENT OF INTEREST OF AMICUS CURIAE**</u>[1]

The Arkansas State Chamber of Commerce/Associated Industries of

Arkansas ("the Chamber") is the largest business advocacy organization in

Arkansas, representing thousands of businesses across every sector of the state's

economy. For decades, the Chamber has partnered with state leadership to identify

and promote policies that create a pro-business, pro-investment environment – one

that enables Arkansas-based companies to expand into new markets while

attracting domestic and foreign capital to fuel continued statewide economic

growth.

The Chamber has a direct and substantial interest in the outcome of this

case. Act 624 represents a dangerous experiment in economic protectionism – a

government mandate that will eliminate essential pharmacy services for

Arkansans. Arkansas businesses and employees will bear the burden of this

disruption through higher costs, fewer choices, and the economic ripple effects that

occur when dozens of pharmacy storefronts and other pharmaceutical providers

close their doors.

The Chamber submits this brief to explain why Act 624 threatens not only

the plaintiffs in this case but the broader Arkansas business community and the

---

[1] All parties consent to the filing of this brief. No counsel for any party authored this brief in whole or in part. No party, person, or entity except amicus made a monetary contribution specifically for the preparation or submission of this brief.

pro-investment economic environment that has fueled the state's impressive recent growth. The Chamber urges this Court to affirm the district court's preliminary injunction.

## INTRODUCTION

The recent history of the Arkansas economy has been a remarkable story of growth and investment.[2] Over the past year, Arkansas has been among the national leaders in GDP growth – driven by broad-based gains across sectors, including agriculture, retail, health care, and durable goods manufacturing such as steel production.[3] This economic growth has fueled a surging labor market, with the state experiencing record high employment and an unemployment rate that consistently beats national trends.[4] At the same time, Arkansas has experienced significant in-migration and business expansion statewide.[5] Put simply, businesses want to come to and grow in Arkansas.

---

[2] Michael Tilley, *Arkansas Again Ranks First in GDP Growth with 5.1% Fourth Quarter Rise*, TALK BUS. (Mar. 28, 2025), https://talkbusiness.net/2025/03/arkansas-again-ranks-first-in-gdp-growth-with-5-1-fourth-quarter-rise/.

[3] Michael Pakko, *Arkansas GDP: 2025Q3*, ARK. ECONOMIST, https://arkansaseconomist.com/arkansas-gdp-2025q3/.

[4] *State Labor Force Hits Record Levels as More Arkansans Seek Jobs*, ARK. DEP'T OF COM. (Jan. 27, 2026), https://commerce.arkansas.gov/state-labor-force-hits-record-levels-as-more-arkansans-seek-jobs/.

[5] Delaney Van Wilpe, *Arkansas Tops List of Most Popular States People Moved to in 2025*, 5NEWS ONLINE (Dec. 23, 2025), https://www.5newsonline.com/article/news/local/arkansas-tops-list-most-popular-states-people-moved-2025/527-5e76a6bc-9734-4c99-9e78-e594b1402a45;

Arkansas' recent economic boom has been enabled by predictable, pro-investment policy that welcomes outside capital while empowering Arkansas firms to scale across state lines. Amicus, the Arkansas Chamber of Commerce/Associated Industries of Arkansas, has partnered with state leadership to identify policies that create a low-cost, high velocity environment for capital deployment that enables Arkansas-based companies to expand into new markets while drawing in domestic and foreign investment to fuel the next phase of statewide economic success.

Unfortunately, Act 624 departs from this approach. Act 624 is a protectionist measure that prohibits certain out-of-state companies, pharmacies associated with pharmacy benefit managers ("PBM Affiliated Pharmacies"), from doing business in Arkansas, and will inevitably discourage others. Like all protectionist policies, Act 624 will ultimately increase costs for Arkansas businesses and consumers, disincentivize outside investment into our state, and limit growth.

This Court should affirm the district court's preliminary injunction for the reasons described in Plaintiffs-Appellees' brief. The Chamber submits this brief to make three points to inform this Court's analysis:

---

Dwain Hebda, *Maintaining Momentum: Arkansas' Business, Tourism Communities Look to Stay on a Roll*, Ark. Money & Pol. (Jan. 20, 2026), https://armoneyandpolitics.com/arkansas-business-tourism-communities/.

First, Act 624 will reduce investment in Arkansas and harm in-state businesses and residents by closing pharmacies, eliminating jobs, and signaling that Arkansas is not a reliable partner for out-of-state businesses to invest and grow. *See R & M Oil & Supply, Inc. v. Saunders*, 307 F.3d 731, 735-736 (8th Cir. 2002) (discriminatory state law struck down under Commerce Clause where the "local benefit actually derived from the statute is minimal or nonexistent" and where law would conceivably "have precisely the opposite effect" of purported benefit).

Second, Act 624 will burden employers who provide their Arkansas employees with health benefits by restricting choice, increasing costs, and imposing significant administrative fragmentation. *See id.*

Third, upholding Act 624 would clear the way for other states to enact laws designed to protect local businesses by targeting successful out-of-state competitors, including those based in Arkansas, which is the precise economic protectionism the Commerce Clause was designed to prevent. *See SDDS, Inc. v. South Dakota*, 47 F.3d 263, 270-271 (8th Cir. 1995) (facially neutral law that was discriminatory in purpose and effect and exported costs to out-of-staters constituted impermissible "protectionism").

## ARGUMENT

**I.     Act 624 Will Harm Arkansas Business and Discourage Economic Investment.**

Act 624 is intended to protect locally owned pharmacies from out-of-state competition, *see* Brief For Plaintiffs-Appellees CVS, Optum, & PCMA at 9-13 (Jan. 28, 2026), but it achieves this goal at the expense of other Arkansas-based businesses. PBM Affiliated Pharmacies do not operate in a vacuum – the PBM Affiliated Pharmacies employ Arkansans, lease commercial property, contract with local service providers, and otherwise fully engage in the local economy. When these pharmacies are forced to exit the market, other Arkansas businesses feel the consequences. *See R & M Oil & Supply, Inc.*, 307 F.3d at 735-737 (discriminatory state law failed *Pike* balancing test where the "local benefit actually derived from the statute is minimal or nonexistent" and where law would conceivably "have precisely the opposite effect" of purported benefits). As the district court correctly recognized, "the burden Act 624 imposes on interstate 'commerce is clearly excessive in relation to the putative local benefits.'" *Express Scripts, Inc. v. Richmond*, No. 4:25-CV-00520-BSM, 2025 U.S. Dist. LEXIS 143385, *11 (E.D. Ark. July 28, 2025) (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970)).

Overall, Act 624 will lead to the closures of more than 40 retail pharmacies.[6] These include 23 retail storefronts operated by CVS across Arkansas,[7] including multiple locations in the state's highest-density areas – Little Rock, Fayetteville, Fort Smith, and Jonesboro.[8] This also includes 11 retail pharmacies operated by Optum that specialize in providing mental health pharmacy services.[9]

The sudden loss of these stores will have rippling economic effects. More than 600 Arkansans employed by PBM Affiliated Pharmacies will lose their jobs.[10] The storefronts are likely to sit empty, which could lower property values, tax revenue, and foot traffic for neighboring businesses. Any local vendors who serviced the closed location will lose business. And Act 624 forecloses any future investment by the PBM Affiliated Pharmacies in Arkansas' communities.

Likewise, Arkansas businesses and residents who rely on PBM Affiliated Pharmacies for prescription drugs and other pharmaceutical services will face

---

[6] Tess Vrbin, *Third Federal Lawsuit Challenges Arkansas' Restrictions on Pharmacy Benefit Managers*, ARK. ADVOC. (June 10, 2025), https://arkansasadvocate.com/2025/06/10/third-federal-lawsuit-challenges-arkansas-restrictions-on-pharmacy-benefit-managers/.

[7] *CVS Arkansas Locations*, CVS Health, https://www.cvs.com/store-locator/cvs-pharmacy-locations/Arkansas (last visited Jan. 30, 2026).

[8] U.S. CENSUS BUREAU, *Congressional Districts of the 118th Congress: Arkansas*, https://www2.census.gov/geo/maps/cong_dist/cd118/st_based/CD118_AR.pdf.

[9] Maia Anderson, *How the Arkansas PBM ban may affect pharmacy access in the state*, HEALTHCARE BREW (May 12, 2025), https://www.healthcare-brew.com/stories/2025/05/1t2/arkansas-pbm-ban-pharmacy-access.

[10] *Id.*

immediate harm. The law will disrupt thousands of patients by forcing them to transfer their prescriptions to a different pharmacy that by definition is not the consumer's first choice.  Obtaining prescriptions will be less convenient and could take more time out of workers' days.[11]  Those who frequented retail pharmacies will have to travel further to reach the remaining locally-owned pharmacies. In doing so, they may also stop frequenting businesses that were near the PBM Affiliated Pharmacies, harming those businesses as well.

Act 624 also harms Arkansas's healthcare economy with its obvious close connection to pharmacy.  The drastic reduction to the number of pharmacies in the state is likely to impose a significant administrative burden on healthcare providers and decrease the quality of care.  Healthcare providers will have to work with their patient base to re-route prescriptions that were previously filled at PBM Affiliated Pharmacies, and may have mixed results. *See* 2025 Ark. Acts 624, § 17-92-417(c)(1)(A). For example, Act 624 guts mail-order pharmacy business in Arkansas, because PBM Affiliated Pharmacies make up the bulk of the mail-order pharmacies serving Arkansas residents.[12] Mail-order pharmacy services are particularly critical in rural areas, where approximately 45% of Arkansans live, and

---

[11] *See* Casey B. Mulligan, *The Value of Pharmacy Benefit Management* at 7, Nat'l Bureau of Econ. Rsch. (July 2022).
[12] Mattingly TJ, Hyman DA, Bai G., *Pharmacy Benefit Managers: History, Business Practices, Economics, and Policy*, JAMA Health Forum*, 2023;4(11):e233804. doi:10.1001/jamahealthforum.2023.3804.

where pharmacy access is already limited.[13] For these Arkansans, mail-order

pharmacy services, which deliver medications directly to patients' doors, provide

an essential lifeline.[14]  As another example, Arkansas has nearly 500 long-term

care facilities serving vulnerable elderly and disabled populations,[15] and these

facilities depend on pharmacy services, including mail-order and specialty

pharmacy programs, to deliver medications to residents who cannot travel to retail

pharmacies.  While locally-owned pharmacies that support Act 624 surely hope to

capture this market share, there is good reason to doubt their ability to fill the void

that would be caused by the departure of the PBM Affiliated Pharmacies.  The

volume of prescriptions that would necessarily flow to those pharmacies could

easily overwhelm their systems and result in delayed delivery to the long-term care

facilities and negative patient outcomes.

---

[13] Frank Seo & Mark S. Goodman, *Rural Profile of Arkansas 2025: Social & Economic Trends Affecting Rural Arkansas*, Univ. of Ark. Sys. Div. of Agric. Coop. Extension Serv. Pub. No. MP585
(2025), https://www.uaex.uada.edu/publications/pdf/MP585.pdf (last visited Feb. 4, 2026).
[14] Benjamin Hardy, *Update: CVS and Express Scripts Sue Arkansas over Law Banning PBMs from Owning Pharmacies*, Ark. Times (May 29, 2025), https://arktimes.com/arkansas-blog/2025/05/29/express-scripts-sues-arkansas-over-new-law-banning-pbms-from-owning-pharmacies.
[15] Ark. Dep't of Hum. Servs., *Long Term Care Facility Search*, https://humanservices.arkansas.gov/divisions-shared-services/provider-services-quality-assurance/long-term-care-facility-search/ (last visited Feb. 4, 2026).

Moreover, Act 624 sends a distinctly mixed message to the very businesses that have been critical to Arkansas' Cinderella story: out-of-state investors. Arkansas is experiencing one of the strongest economic growth periods in its history, with significant foreign and domestic investment, national company expansions, and a surge in business-friendly rankings.[16] The Chamber has proudly supported the state's efforts.  And, while the Chamber continues to support its home grown and established Arkansas businesses, the state could not have achieved its recent success without attracting out-of-state businesses that invest in the state, creating jobs and helping strengthen the economy.

Act 624 sends a chilling message to other out-of-state enterprises looking to expand in the Arkansas market. Instead of being open to investment and growth, the Act makes clear that Arkansas will not hesitate to foreclose out-of-state competition in favor of its own local businesses. The Chamber has worked for decades to make Arkansas a place where businesses want to invest and grow. Act 624 threatens to undo that progress.

---

[16] *Leadership Arkansas 2025 Mid-Year Report*, Ark. Bus., https://www.arkansasbusiness.com/article/leadership-arkansas-2025-mid-year-report (last visited Jan. 30, 2026).

**II.  Act 624 Will Burden Employers that Offer Health Benefit Plans to Their Employees.**

Public health issues are business issues, too.  The availability of high-quality, convenient healthcare is a boon to companies seeking to recruit talent to an area.[17] Conversely, a business is less likely to put down roots in an area that provides subpar health services.  Act 624's decimation of Arkansas' pharmacy landscape will deter Arkansas' further economic growth.

Act 624 will also harm the many Chamber members who offer health benefits to their Arkansas-based employees. Act 624 will frustrate employers' ability to design benefit plans both by reducing the choice of providers available to serve beneficiaries in Arkansas, thus increasing costs, and by creating additional administrative burdens for employers operating across state lines, who will need to create state-specific plan designs to accommodate the differing laws between states.

---

[17] Mark Crawford, *Is Healthcare Part of the Facility Location Decision?*, Area Dev. (Nov. 2012), https://www.areadevelopment.com/laboreducation/november2012/healthcare-a-business-location-consideration-16161555.shtml (last visited Feb. 4, 2026); Peter Miscovich, *Locations That Promote Employee Health and Well-Being Coming to the Forefront*, Area Dev. (Q1 2022), https://www.areadevelopment.com/workplace-trends/q1-2022/locations-that-promote-employee-health-and-well-being.shtml (last visited Feb. 4, 2026).

The majority of employers that provide prescription drug benefits to their employees contract with a PBM to administer these prescription drug benefits to employees. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1188-1189 (10th Cir. 2023). PBMs compete to serve plan sponsors. Among the terms that PBMs compete on is their pharmacy networks, including retail, mail-order, and specialty pharmacies where a beneficiary can use their benefits. *See id.* PBMs routinely contract with both independent and affiliated pharmacies when constructing pharmacy networks, ensuring, among other things, compliance with federal and state law. Many employers choose to rely on a pharmacy network that includes the use of PBM Affiliated Pharmacies because such networks often offer significant savings.

Under Act 624, that choice is gone – an unprecedented restriction that would be unique to Arkansas. And, not only will employer-sponsored plans be unable to encourage their beneficiaries to use the most cost-effective pharmacies, their pharmacy networks will have dozens fewer retail and mail-order pharmacies to choose from.

Act 624's limitation on choice of providers will be even more profound for mail-order and specialty pharmacy services. These constraints will decrease overall affordability and pharmacy access for employees for the very drugs that have made

it difficult for employers to keep up in their benefits offerings – specialty

prescriptions. *See Mulready*, 78 F.4th at 1189.

Further, Act 624 will increase the administrative burdens on employers (both

those based in Arkansas and those based elsewhere) who sponsor a health benefits

plan for Arkansas based employees. Employers, with the aid of their PBMs, will

need to identify new pharmacy benefit arrangements, negotiate new contracts,

communicate changes to employees, and ensure continuity of coverage during any

transition.

Multi-state employers will be forced to decide whether to change benefit

plans nationwide or establish a separate plan for Arkansas employees only. Either

option presents significant challenges – eliminating PBM Affiliated Pharmacies

from their plan-wide networks, and therefore foregoing cost savings, or foregoing

national plan uniformity, which will also increase costs and make it difficult to

offer consistent benefits to all employees. These administrative burdens could

discourage out-of-state businesses from expanding into Arkansas or hiring

Arkansas-based employees. And if every state were permitted to use its medical

licensure laws to dictate the terms of employer health plan benefits, it will create

significant burdens on managing a multi-state business.[18]

---

[18] Act 624's ban on PBM Affiliated Pharmacies is, at least partially, an attempt to indirectly shape employee benefit plans in a manner that ERISA prohibits Arkansas from accomplishing through direct regulation of the plan. *See* 29 U.S.C.

### III. Arkansas Businesses Rely on Free and Equal Access to Out-of-State Markets.

The Chamber's interests in this case go well beyond Act 624, pharmacies, and employer-sponsored benefits. In fact, the stakes are much higher for interstate business as a whole. If this Court were to allow Act 624 to go into effect, it will set a dangerous precedent that states may surgically target out-of-state businesses to protect favored in-state industries from competition under the false pretense of regulating "vertical integration." Such a precedent will have dire stakes for Arkansas-based businesses across industries.

Arkansas is home to several of the nation's most successful multi-state corporations, and is also a state where new, innovative businesses are founded and grow.[19] Arkansas ranks 11th nationally in number of Fortune 500 companies per capita, just above Texas and just behind New York.[20] Collectively, the Arkansas

---

§ 1144(a). ERISA preempts state laws that regulate benefit design, and federal courts have held that state regulation of an ERISA plan's provider network, including a PBM administered pharmacy network, is an impermissible state intrusion into plan uniformity. *See Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86-87 (2020) (ERISA preempts laws that "require providers to structure benefit plans in particular ways"); *Mulready*, 78 F.4th at 1198 (10th Cir. 2023) (laws dictating a pharmacy network's scope preempted by ERISA).

[19] *Leadership Arkansas 2025 Mid-Year Report*, Ark. Bus., https://www.arkansasbusiness.com/article/leadership-arkansas-2025-mid-year-report (last visited Jan. 30, 2026).

[20] *Citizen's Guide-Arkansas's Fortune 500 Companies*, Univ. of Cent. Ark., Ark. Ctr. for Research in Econ., https://uca.edu/acre/citizens-guide-arkansass-fortune-500-companies (last visited Jan. 30, 2026).

companies featured in the 2024 Fortune 500 – Walmart, Tyson Foods, Murphy

USA, and J.B. Hunt Transport Services – saw more than $733 billion in revenue in

2023 and employed more than 2.2 million people.[21] At the same time, Arkansas

has proven to be fertile ground for small business growth, ranking as the third least

expensive state in which to start a new business.[22] With over 82% of corporate

investment projects in the state involving investments up to $50 million, Arkansas

has a strong commitment to fostering small and mid-sized enterprises alongside its

four homegrown Fortune 500 companies.[23]

The continued growth of these Arkansas-based companies, both large and

small alike, depends on the ability to compete for business opportunities in other

states. Arkansas is a small state, comprising less than one percent of the U.S.

population.[24] The success of Arkansas' economy depends on the ability to sell our

goods and services nationwide.

---

[21] Adam Bruns, *The Fantastic Four*, *Arkansas Economic Development Guide 2025,* Site Selection Mag., https://siteselection.com/the-fantastic-four/ (last visited Jan. 30, 2026).

[22] Ron Starner, *Entrepreneurship: Arkansas Is Fertile Soil For Growing Businesses*, *Arkansas Economic Development Guide 2025*, Site Selection Mag., https://siteselection.com/entrepreneurship/.

[23]Anna Reuter, *Companies Are Investing in Arkansas*, Site Selection Mag. (2022), https://siteselection.com/companies-are-investing-in-arkansas/ (last visited Feb. 4, 2026).

[24] Arkansas*, WORLD POPULATION REV.,* https://worldpopulationreview.com/states/arkansas (last visited Feb. 3, 2026).

Arkansas businesses' desire to grow and fairly compete across state lines is consistent with the founders' vision, enacted in the Commerce Clause, that "our economic unit is the Nation." *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 537 (1949). States' "tendencies toward economic Balkanization…plague[]" that national unity and impede economic growth. *Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979).

Act 624 does exactly what the founders sought to prevent. It bans out-of-state businesses that have achieved enough success in Arkansas to threaten in-state businesses in the same industry. The Arkansas General Assembly declared on the face of the law that it is intended to favor local pharmacies, and the law does exactly that: only out-of-state pharmacies are affected by Act 624, and not a single local pharmacy is burdened by the statute. *See* Brief For Plaintiffs-Appellees CVS, Optum, & PCMA at 1 (Jan. 28, 2026). If this Court were to uphold Act 624, it would signal to other States that they may enact laws designed to protect local businesses by targeting successful out-of-state competitors.

Consider the implications for some of Arkansas's biggest companies:

**Walmart**: Walmart, Inc., headquartered in Bentonville, is the world's largest retailer and the state's largest private employer. Walmart operates more than 5,400 stores across the United States. Nearly 90% of the U.S. population lives within 10

15

miles of a Walmart store. [25] And the company dominates the grocery landscape: it holds the #1 position for grocery market share nationally, capturing as much as 50.6% market share in Oklahoma and 45% in Mississippi.[26]

Walmart's presence in the pharmacy space has also grown steadily in recent years.[27] Walmart operates close to 4,600 pharmacy locations, with a national market share of nearly 5%.[28] In addition to its retail locations, Walmart has focused on expanding its pharmacy reach by offering mail-order and same-day delivery for medications.[29]

---

[25] *Walmart Inc., Location Facts: United States, https://corporate.walmart.com/about/location-facts/united-states (last visited Feb. 4, 2026).*

[26] Grocery Gap Atlas State Data, *Grocery Gap Atlas: Oklahoma*, https://grocerygapatlas.rafiusa.org/state/40 (last visited Jan. 30, 2026); Grocery Gap Atlas State Data, *Grocery Gap Atlas: Mississippi*, https://grocerygapatlas.rafiusa.org/state/28 (last visited Feb. 4, 2026).

[27] *Walmart Expands Pharmacy Central Fill Operations with Opening of Largest Facility Yet in Frederick, Maryland*, WALMART (May 22, 2025), https://corporate.walmart.com/news/2025/05/22/walmart-expands-pharmacy-central-fill-operations-with-opening-of-largest-facility-yet-in-frederick-maryland.

[28] *Pharmacies Ranked by Rx Market Share in the U.S.*, STATISTA, https://www.statista.com/statistics/734171/pharmacies-ranked-by-rx-market-share-in-us/ (last visited Feb. 3, 2026); Kim Souza, *The Supply Side: Walmart Sees Growth in Optical, Pharmacy Businesses*, TALK BUS. (Feb. 19, 2025), https://talkbusiness.net/2025/02/the-supply-side-walmart-sees-growth-in-optical-pharmacy-businesses/.

[29] Emily Crowe, *Walmart Ups Ante on Prescription Delivery*, PROGRESSIVE GROCER (Sept. 23, 2025), https://progressivegrocer.com/walmart-ups-ante-prescription-delivery; Ed Gruver, *Mechanicsburg Site First Nationally for Walmart's Expanded Pharmacy Delivery*, CENT. PA. BUS. J. (Sept. 23,

It is easy to imagine how, if Act 624 were to go into effect, another state could use a thinly-veiled pretense to shift business from Walmart to favored in-state competitors. Consider Minnesota, another Eighth Circuit state and home to Target Corporation. If Minnesota were to pass a law identical to Act 624, but carving out Target pharmacies (which are owned by CVS) instead of Walmart, it would hamstring Walmart from competing on even playing field with in-state businesses.

The potential burden on Walmart's interstate business would not be limited to pharmacy. Walmart's extensive presence in the grocery sector, or with respect to a variety of other retail goods, would be directly threatened under the same protectionist logic Act 624 employs, even with pharmacy entirely out of the equation. If Act 624 is upheld, what would prevent Oklahoma, Mississippi, or another state from using a pretense to target out-of-state grocers, while ensuring favored locally-owned chains are unharmed?[30]

_____

2025), https://www.cpbj.com/mechanicsburg-site-first-nationally-for-walmarts-expanded-pharmacy-delivery/.

[30] Such a state could cite to a similarly pretextual argument about vertical integration, while exempting the hometown grocer (even if that grocer is Costco which, like Walmart, relies on vertical integration).

**Tyson Foods**: Tyson Foods, based in Springdale, is one of the world's largest food companies.[31] Tyson employs over 130,000 people, with about 120,000 based in the United States,[32] and operates over 150 food processing plants across multiple states.[33] Tyson is engaged in many stages of the food production process from raising livestock to processing and distributing finished products.[34]

Much like with Walmart, a state could enact legislation modeled after Act 624 to target portion of Tyson's business that may threaten locally-operated competitors. For example, a state like Missouri (also in this Circuit) could enact a law to disadvantage Tyson and other out-of-state businesses under the guise of regulating "vertical integration" in favor of locally-owned meat processing companies, while drafting carveouts for a large multistate operator like National Beef that is based in-state. If allowed, this type of deliberate effort to burden out-of-state operators in favor of locally-owned interests will dampen the long-term of success of Arkansas' innovative companies.

---

[31] Tyson Foods, Inc.*, Tyson Foods Reports First Quarter 2026 Results* (Feb. 2, 2026), https://ir.tyson.com/news/news-details/2026/Tyson-Foods-Reports-First-Quarter-2026-Results/default.aspx.

[32] *Tyson Foods, Inc. SEC 10-K Report*, TradingView (Nov. 12, 2024), https://www.tradingview.com/news/tradingview:165f98f0f3feb:0-tyson-foods-inc-sec-10-k-report/.

[33] Tyson Foods, Inc., *Facts About Tyson*, https://ir.tyson.com/about-tyson/facts/default.aspx (last visited Feb. 4, 2026).

[34] *See id.*

In fact, if Act 624 is upheld, future targeting of Arkansas' most successful businesses is not merely theoretical, but likely: Over the years, state laws aimed at the agricultural, freight transportation, and energy industries have all been struck down on Dormant Commerce Clause grounds. *See, e.g.*, *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186 (1994) (striking down law targeting agriculture industry); *Bibb v. Navajo Freight Lines*, 359 U.S. 520 (1959) (striking down law targeting freight transportation industry); *West v. Kansas Natural Gas Co.*, 221 U.S. 229 (1911) (striking down law targeting natural gas industry). Regardless of the companies or industries targeted, the result of laws like Act 624 is to create a patchwork of protectionist barriers that the Commerce Clause is intended to prevent. *Dep't of Revenue v. Davis*, 553 U.S. 328, 337-338 (2008) ("The point [of the Commerce Clause] is to 'effectuat[e] the Framers' purpose to prevent a State from retreating into economic isolation'") (citations and quotations omitted).

## CONCLUSION

Act 624 is an unprecedented measure. It embeds economic protectionism into pharmacy licensure, with predictable harms to Arkansas employers and employees and to the interstate marketplace Arkansas businesses rely on. The district court correctly concluded that Act 624 likely violates the Commerce Clause. This Court should affirm the preliminary injunction.

19

Dated: February 4, 2026

Respectfully submitted,

/s/ *Andrew M. London*

Andrew M. London
Kristyn Bunce DeFilipp
Marilyn J. Icsman
Maya Levine
Foley Hoag LLP
155 Seaport Blvd
Boston, MA 02210
tel: 617.832.1000
fax: 617.832.7000
alondon@foleyhoag.com
kbuncedefilipp@foleyhoag.com
micsman@foleyhoag.com
mlevine@foleyhoag.com

*Counsel for Amicus Curiae*

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), this brief complies with the type form and volume requirements of the Federal Rule of Appellate Procedure because it has been prepared in a proportionally spaced typeface using 14-point Times New Roman font, and contains 3908 words, excluding the portions exempted by Rule 32(f).

The brief also complies with the electronic-filing requirement of the Circuit Rule 28A(h)(2) because it was scanned for viruses and no virus was detected.

/s/ *Andrew London*

Andrew M. London
*Counsel for Amicus Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, I electronically filed the foregoing with the Court using the CM/ECF system.  Service will be accomplished electronically through the ECF system to all registered participants.

/s/ *Andrew London*

Andrew M. London
*Counsel for Amicus Curiae*