No. 25-2529

# United States Court of Appeals
# For the Eighth Circuit

EXPRESS SCRIPTS, INC., ET AL.,
Plaintiffs-Appellees,

v.

RODNEY RICHMOND, in his official capacity as board member of the
Arkansas State Board of Pharmacy, et al.,
Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Arkansas
Nos. 4:25-cv-520, 4:25-cv-524, 4:25-cv-561, 4:25-cv-598
(Hon. Brian S. Miller)

## Defendants-Appellants' Reply Brief

TIM GRIFFIN
  Arkansas Attorney General

AUTUMN HAMIT PATTERSON
  Arkansas Solicitor General

M. ERICA CROUSE
  Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, AR 72201
(479) 441-0165
Erica.Crouse@arkansasag.gov

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

Table of Contents .................................................................. i

Table of Authorities ............................................................. ii

Introduction .......................................................................... 1

Argument ............................................................................... 2

I.  Plaintiffs' Arkansas Operations Undermine Any Claim
    That They Are Discriminated Against as Out-of-State
    Firms for Dormant Commerce Clause Purposes ......................... 2

    A.  As Companies Maintaining Substantial Operations
        in Arkansas, Plaintiffs Cannot Argue Act 624,
        Which Applies Equally to All Businesses Operating
        in Arkansas, Discriminates Against Them ........................... 3

    B.  Any Forfeiture Here is Excusable ..................................... 7

II. Act 624 Does Not Discriminate Against Interstate
    Commerce ............................................................................ 8

    A.  Under *Exxon*, Laws That Ban Vertical Integration
        Are Non-Discriminatory ................................................... 9

    B.  Act 624 Is Not Discriminatory in Purpose ........................ 12

    C.  Act 624 Is Not Discriminatory in Effect............................ 17

    D.  Act 624 Does Not Create a Carve-Out Favoring
        In-State Firms ................................................................. 21

III. Act 624 Satisfies *Pike* ........................................................ 23

    A.  Plaintiffs Cannot Show That Act 624 Imposes a
        Substantial Burden .......................................................... 24

     B.    Plaintiffs Cannot Show Act 624's Burdens on
             Interstate Commerce Clearly Exceed Its Putative
             Benefits ................................................................... 27

   IV.  The Remaining Factors Weigh Against Preliminary Relief ....................... 29

Conclusion ................................................................................................ 30

Certificate of Compliance ....................................................................... 32

Certificate of Service ............................................................................... 33

Appellate Case: 25-2529    Page: 3    Date Filed: 02/25/2026 Entry ID: 5611893

**Cases**      **Page**

*Allstate Ins. Co. v. Abbott*,
495 F.3d 151 (5th Cir. 2007) ....................................................... 13, 15

*Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*,
115 F.3d 1372 (8th Cir. 1997) ............................................. 2, 4, 5, 6, 7, 8

*Cachia v. Islamorada*,
542 F.3d 839 (11th Cir. 2008) ..................................................... 19, 20

*Cotto Waxo Co. v. Williams*,
46 F.3d 790 (8th Cir. 1995) ............................................................. 28

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987) ...................................................................... 29

*Dean Milk Co. v. City of Madison*,
340 U.S. 349 (1951) ....................................................................... 4

*Eggers v. Evnen*,
48 F.4th 561 (8th Cir. 2022) ............................................................ 30

*Exxon Corp. v. Governor of Maryland*,
437 U.S. 117 (1978) .............................................................. *passim*

*Family Winemakers of Cal. v. Jenkins*,
592 F.3d 1 (1st Cir. 2010) .......................................................... 19, 20

*Fla. Transp. Servs., Inc. v. Miami-Dade County*,
703 F.3d 1230 (11th Cir. 2012) ......................................................... 6

*Ford Motor Co. v. Tex. Dep't of Transp.*,
264 F.3d 493 (5th Cir. 2001) ...................................................... 13, 15

*Gov. of Maryland v. Exxon Corp.*,
370 A.2d 1102 (Md. 1977) ............................................................. 13

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ............................................................. 4, 18, 19

Appellate Case: 25-2529    Page: 4    Date Filed: 02/25/2026 Entry ID: 5611893

*IESI AR Corp. v. Nw. Ark. Reg'l Solid Waste Mgmt. Dist.*,
    433 F.3d 600 (8th Cir. 2006) ............................................................3, 4, 5, 6, 8

*Island Silver & Spice, Inc. v. Islamorada*,
    542 F.3d 844 (11th Cir. 2008) ....................................................... 19, 20

*LensCrafters, Inc. v. Robinson*,
    403 F.3d 798 (6th Cir. 2005) ........................................................ 13, 15

*LSP Transmission Holdings, LLC v. Sieben*,
    954 F.3d 1018 (8th Cir. 2020) ............................................................. 5

*Minnesota v. Clover Leaf Creamery*,
    449 U.S. 456 ................................................................................ 16

*Nat'l Ass'n of Optometrists & Opticians v. Brown*,
    567 F.3d 521 (9th Cir. 2009) .............................................................. 13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) ........................................................... 29

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) ...................................................................... 23

*NextEra Energy Capital Holdings, Inc. v. Lake*,
    48 F.4th 306 (5th Cir. 2022) ............................................................... 6

*Norfolk S. Corp. v. Oberly*,
    822 F.2d 388 (3d Cir. 1987) .............................................................. 14

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ...................................................... 7, 23, 25, 28, 29

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
    530 F.3d 724 (8th Cir. 2008) (en banc) ............................................... 23

*R & M Oil & Supply, Inc. v. Saunders*,
    307 F.3d 731 (8th Cir. 2002) .............................................................. 28

*Robinson v. Norling*,
    25 F.4th 1061 (8th Cir. 2022) .............................................................. 7

iv

*S. Union Co. v. Mo. Pub. Serv. Comm'n*,
    289 F.3d 503 (8th Cir. 2002) ...........................................................24

*S.D. Farm Bureau, Inc. v. Hazeltine*,
    340 F.3d 583 (8th Cir. 2003) ........................................................... 17

*SDDS, Inc. v. South Dakota*,
    47 F.3d 263 (8th Cir. 1995) ..........................................................17, 21

*Truesdell v. Friedlander*,
    80 F.4th 762 (6th Cir. 2023) ....................................25, 26, 27, 29

*Trump v. CASA, Inc.*,
    606 U.S. 831, 861 (2025) ..................................................................30

*U.S. v. Gutierrez*,
    130 F.3d 330 (8th Cir. 1997) .............................................................8

*United States v. Gaines*,
    639 F.3d 423 (8th Cir. 2011) .............................................................5

*Waste Sys. Corp. v. County of Martin*,
    985 F.2d 1381 (8th Cir. 1993) ..........................................................4

*Weitz Co. v. Lloyd's of London*,
    574 F.3d 885 (8th Cir. 2009) .............................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...............................................................................28

**Statutes**

Ark. Code Ann. § 17-92-416 ........................................................2, 11, 26

Ark. Code Ann. § 23-92-514 .................................................................. 16

**Other Authorities**

*CVS Caremark/Walmart Dispute*, NCPA (Jan. 18, 2019),
    https://tinyurl.com/5d476tcn....................................................23

Appellate Case: 25-2529    Page: 6    Date Filed: 02/25/2026 Entry ID: 5611893

*CVS Health and Walmart Announce New PBM Pharmacy Network Agreement*, WALMART (Jan. 18, 2019),
https://tinyurl.com/yc8hmj48 ......................................................................23

*How PBM Reform Could Help Walgreens and Other Retail Pharmacies*,
FORBES (Dec. 18, 2024), https://tinyurl.com/vd9ejcmj..................................23

vi

# INTRODUCTION

Plaintiffs' arguments rest on a misreading of Act 624 and the legislative record. Act 624 does not discriminate against or target out-of-state commerce; it regulates vertical integration of PBMs and pharmacies—a market structure with inherent conflicts of interest that drive predatory practices—and applies regardless of where PBM-affiliated pharmacies are headquartered or incorporated. Act 624's design reflects legislative intent: to protect pharmacies and consumers from anti-competitive practices by PBM-affiliated pharmacies, not to discriminate against out-of-state entities. Indeed, Act 624 doesn't restrict pharmacies that are not affiliated with PBMs, including several large out-of-state pharmacies. Plaintiffs thus cannot show Act 624 is discriminatory against interstate commerce in purpose or effect. Nor can Plaintiffs show Act 624's burdens on interstate commerce clearly exceed its putative benefits, which is why they impermissibly conflate the Act's burdens on particular interstate firms with burdens on interstate commerce. The Court should vacate the district court's preliminary-injunction order.

1

# ARGUMENT

## I. Plaintiffs' Arkansas Operations Undermine Any Claim That They Are Discriminated Against as Out-of-State Firms for Dormant Commerce Clause Purposes.

As explained, "out-of-state" entities that "permanently locate[] an operation within the state" are not out-of-state entities for purposes of discrimination claims under the dormant Commerce Clause. Appellants' Br. 20 (quoting *IESI AR Corp. v. Nw. Ark. Reg'l Solid Waste Mgmt. Dist.*, 433 F.3d 600, 605 (8th Cir. 2006)). For example, "[a] Delaware corporation doing business in Minnesota could not argue that it is discriminated against by Minnesota laws that apply equally to all businesses operating in the state." *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1386-87 (8th Cir. 1997). Yet that's what Plaintiffs do when challenging Act 624.

Act 624 prohibits PBMs from holding an interest in a pharmacy permit "for the retail sale of drugs or medicines" in Arkansas. Ark. Code Ann. § 17-92-416(b). Act 624 applies equally to all pharmacies operating in Arkansas. Nonetheless Plaintiffs claim, despite substantial, longstanding operations in Arkansas, that Act 624 discriminates against them as out-of-state companies. That argument fails because Plaintiffs aren't out-of-state firms for purposes of their discrimination claim. *See* Appellants' Br. 19-26. In response, Plaintiffs take an overly narrow view of

2

precedent and urge forfeiture. Neither argument demonstrates Plaintiffs can claim discrimination from a law that applies equally to all vertically integrated firms operating within Arkansas.

## A. As Companies Maintaining Substantial Operations in Arkansas, Plaintiffs Cannot Argue Act 624, Which Applies Equally to All Businesses Operating in Arkansas, Discriminates Against Them.

Plaintiffs are wrong that their substantial operations in Arkansas are irrelevant to determining whether they are discriminated against as out-of-state firms for dormant Commerce Clause purposes. Notably, Plaintiffs don't dispute that they maintain substantial operations in Arkansas. Appellees' Br. 24, 55. Indeed, they themselves emphasized their Arkansas presence below. Take CVS for example, which boasts that it has operated in Arkansas "[s]ince 2012," "employ[ing] more than 500 Arkansans to operate 23 retail pharmacies in the State." R. Doc. 14, at 19. Despite their significant operations in Arkansas, Plaintiffs argue they should be treated as out-of-state entities because they are "national corporations," that "are headquartered outside Arkansas," with "employees and operations outside of Arkansas." Appellees' Br. 23. But this Court previously "decline[d] to follow" that approach, which would treat an out-of-state entity "that permanently locates an operation within the state" as still being "an 'out-of-state' entity that can complain that a law that even-handedly restricts a local market is 'discriminatory.'" *IESI*, 433

3

F.3d at 605 (quoting *Oehrleins*, 115 F.3d at 1386). And this Court noted that such an approach would "vastly expand the implications of the dormant Commerce Clause" and "render virtually all local economic regulations 'discriminatory' and subject them to 'per se' invalidation." *Id.* Plaintiffs attempt to ignore this Court's reasoning from *IESI* and *Oehrleins* in three ways. None are persuasive.

First, Plaintiffs argue that if local operations mattered for the discrimination analysis, other cases would have come out differently. For example, they argue that if Defendants are right then the Supreme Court in *Exxon* "should not even have addressed" the dormant Commerce Clause claims. Appellees' Br. 26. But Plaintiffs concede no one made that argument in *Exxon*, so *Exxon* doesn't establish that firms headquartered or incorporated out-of-state must be treated as out-of-state for dormant Commerce Clause purposes despite extensive in-state operations. *Id.* at 25-26. The same is true of Plaintiffs' other cited cases. And those cases are also distinguishable because they involved regulations favoring local interests by imposing differential burdens on interstate goods. *See Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 (1951) (five-mile local pasteurization requirement functionally barring out-of-state milk); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 351-52 (1977) (ban on displaying Washington's grades on apples shipped into North Carolina, disadvantaging interstate growers); *Waste Sys. Corp. v. County of Martin*, 985

Appellate Case: 25-2529    Page: 11    Date Filed: 02/25/2026 Entry ID: 5611893

F.2d 1381, 1383 (8th Cir. 1993) (flow-control ordinance requiring in-county waste delivery and barring export to out-of-state facilities). Plaintiffs have no answer to Defendants' observation that "local presence" is what matters for dormant Commerce Clause violations, which is why "the Supreme Court's many cases 'finding dormant Commerce Clause violations' do 'not even mention the place of incorporation' of the local interests that those laws favored." Appellants' Br. 24 (quoting *NextEra Energy Capital Holdings, Inc. v. Lake*, 48 F.4th 306, 322-23 (5th Cir. 2022)).

Second, Plaintiffs interpret this Court's cases too narrowly, arguing that how to determine whether an entity is in-state is an open question on which *IESI* and *Oehrleins* have nothing to say. To be sure, as Defendants flagged, this Court indicated an open question exists in a footnote in *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018, 1029 n.7 (8th Cir. 2020). Appellants' Br. 23 n. 4. But this Court's earlier decisions in *IESI* and *Oehrleins* seem to have rested on the premise— which both opinions discussed extensively—that entities with substantial in-state operations are in-state entities regardless of corporate domicile. Appellants' Br. 20-23. And this Court "appl[ies] the more accurate prior panel statement of the law under the rule that precludes one panel of this court from overruling a prior panel's decision." *United States v. Gaines*, 639 F.3d 423, 429 n.4 (8th Cir. 2011). Regardless, even assuming *LSP*'s later footnote comment controls, Plaintiffs cannot explain why

this Court should depart from sister circuits, which "have rejected the idea that a law survives Commerce Clause scrutiny if many of the favored interests are incorporated elsewhere." *NextEra*, 48 F.4th at 323. This approach prevents dormant Commerce Clause liability from turning "on the empty formality" of where a business is incorporated, rather than focusing on where its "business takes place or where its political influence lies." *Fla. Transp. Servs., Inc. v. Miami-Dade County,* 703 F.3d 1230, 1259 (11th Cir. 2012).

Third, Plaintiffs try distinguishing *IESI* and *Oehrleins* because they "involved situations where … the law '*even-handedly* restrict[ed] a local market.'" Appellees' Br. 28 (quoting *Oehrleins*, 115 F.3d at 1386 (emphasis added)). But that's precisely the situation here: Act 624 applies to Plaintiffs—just like any other vertically integrated firm operating in Arkansas—regardless of corporate domicile. Act 624 doesn't "treat a company incorporated or principally located in another state differently from [Arkansas] companies," so the cases are analogous in that way. *Oehrleins*, 115 F.3d at 1387 n.13. In arguing otherwise, Plaintiffs conflate a disparate burden on particular companies that happen to be domiciled in other States as differential treatment of companies based on their domicile. But that argument has been repeatedly rejected. *See infra* 18-19. And to the extent that "[r]estrictions on the ability of companies, regardless of state of origin" are "relevant to the Commerce Clause issue,"

that goes "not to a finding of 'discrimination' but to whether the effect … is to impermissibly burden interstate commerce" under *Pike* balancing. *Oehrleins*, 115 F.3d at 1387. In short, Plaintiffs cannot show Act 624 discriminates against them as out-of-state firms for dormant Commerce Clause purposes.

### B. Any Forfeiture Here is Excusable.

Although Plaintiffs argue Defendants have forfeited any argument that Plaintiffs should not be treated as out-of-state entities here, they implicitly acknowledge that forfeiture can be excused. The circumstances here justify excusing any forfeiture. This Court "excuse[s] forfeiture" where an appellant raises "purely legal issue[s]' that don't require 'additional evidence or argument'" below. *Robinson v. Norling*, 25 F.4th 1061, 1063 (8th Cir. 2022) (quoting *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 891 (8th Cir. 2009)). That's true here.

Because Plaintiffs' significant and longstanding operations in Arkansas are undisputed, *supra* 3, the Court doesn't need any additional evidence or argument to determine whether the district court improperly viewed Plaintiffs as out-of-state companies because they are headquartered elsewhere. Appellants' Br. 20. "With nothing else needed to resolve this purely legal issue that is beyond doubt," this Court should "exercise [its] discretion to correct the error." *Robinson*, 25 F.4th at 1063 (citation and quotation omitted).

7

Additionally, this Court may review for plain error treating Plaintiffs as out-of-state companies under this Court's decisions in *IESI* and *Oehrleins* to avoid "a plain miscarriage of justice." *U.S. v. Gutierrez*, 130 F.3d 330, 332 (8th Cir. 1997) (quoting *Davis v. Wyrick*, 766 F.2d 1197, 1204 (8th Cir. 1985)). It would be unjust for a democratically enacted law's enforcement to be enjoined because controlling precedent was not cited below. That's especially true here because this appeal arises from a preliminary injunction where numerous legal claims (that have been whittled down considerably on appeal) were necessarily addressed in a compressed timeframe. In these circumstances, declining to consider controlling precedent would not promote orderly appellate review, so this Court should not "refuse to consider each nuance or shift in approach urged by a party simply because it was not similarly urged below." *Weitz*, 574 F.3d at 890 (citation omitted).

## II.  ACT 624 DOES NOT DISCRIMINATE AGAINST INTERSTATE COMMERCE.

In any event, even if Plaintiffs are treated as out-of-state entities for dormant Commerce Clause purposes, they cannot show likely success on their claim that Act 624 discriminates against interstate commerce. Act 624 regulates PBM-pharmacy vertical integration—an organizational structure creating conflicts of interest and incentivizing predatory practices—not interstate commerce. *Exxon* confirms that States may prohibit vertical integration even where affected firms operate across

8

state lines. Appellants' Br. 28-33. Plaintiffs' attempt to recast that regulation as geographic protectionism fails. They identify no statutory distinction between in-state and out-of-state status, cannot demonstrate a discriminatory effect on interstate commerce, and offer no evidence of a carve-out for interstate firms. Plaintiffs thus fail to show Act 624 is discriminatory.

### A. Under *Exxon*, Laws That Ban Vertical Integration Are Non-Discriminatory.

As Defendants explained, *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978), and decisions by multiple courts of appeals applying it since, have "upheld a plethora of restrictions on various forms of vertical integration." Appellants' Br. 26; *see id.* 27-34. These cases demonstrate that, "[f]or a vertical-integration restriction to have a discriminatory purpose in spite of *Exxon*, its true purpose must be to protect in-state firms from out-of-state competition in general, not just vertically integrated competition." *Id.* at 27. Not only do Plaintiffs have no evidence that Act 624 has a broad anti-competition purpose, but evidence also demonstrates the opposite as Act 624 doesn't restrict competition from out-of-state, not-vertically integrated companies like Walgreens, Amazon, and Kroger. *Id.* at 33-34.

In response, Plaintiffs urge a "far narrower" interpretation of *Exxon*, insisting it's irrelevant to determining whether a law has a discriminatory purpose. Appellees' Br. 50. Next, they attempt to distinguish *Exxon* from this case. They are wrong

9

on both fronts.

First, the Supreme Court necessarily rejected the argument that Maryland's law, which protected in-state businesses from vertically integrated, out-of-state competitors, purposefully discriminated against interstate commerce in *Exxon*. There, plaintiffs alleged discriminatory purpose in their Supreme Court briefs, yet the Supreme Court concluded the law didn't discriminate against interstate commerce. Appellants' Br. 35-37; *see* Ashland Oil, Inc. Reply Br., *Exxon*, 1978 WL 207215, at *10 ("The obvious purpose of the Act was to protect dealers from competition by whatever means the Legislature could be persuaded to adopt. It is difficult to conceive of a clearer example of … discriminat[ing] against interstate interests.").[1] Contrary to Plaintiffs' contention, the Supreme Court didn't specifically "note[] the lack of evidence that Maryland lawmakers were trying to favor local dealers over interstate dealers," Appellees' Br. 49, but rather, simply noted Maryland's law didn't impose any "barriers whatsoever against interstate" non-vertically integrated

---

[1] *See also* Exxon Corp.'s Br., *Exxon*, 1977 WL 204878, at *28 ("[I]t was the clear and specific intent of the Maryland Legislature that the Maryland dealers were to be the principal beneficiaries of the Act … present[ing] 'the rare instance where a State artlessly discloses an avowed purpose to discriminate against interstate goods' to benefit local dealers." (quoting *Dean Milk*, 340 U.S. at 354); Ashland Oil, Inc., Br., *Exxon*, 1977 WL 204879, at *19 ("[T]he legislative history shows that [Maryland's law] was adopted in response to pressures from local dealers and was amended so that it would apply only to out-of-state refiners.").

Appellate Case: 25-2529     Page: 17     Date Filed: 02/25/2026 Entry ID: 5611893

companies or "distinguish between in-state and out-of-state companies" that were not vertically integrated, *Exxon*, 437 U.S. at 126. Accordingly, a law aimed at protecting businesses from vertically integrated competition alone doesn't have a discriminatory purpose under *Exxon*.

Second, Plaintiffs' attempts to distinguish *Exxon* fail. They claim, without citing evidence, that Act 624 "will shift business from out-of-state pharmacies to local competitors," and "exempts the only in-state entity that is vertically integrated." Appellees' Br. 51. But market share could just as easily shift to non-vertically integrated, out-of-state pharmacies like Walgreens, Amazon, and Kroger, Appellants' Br. 33-34, and Act 624 has no exemption for in-state pharmacies that are PBM-affiliated—no PBM may have an interest in a pharmacy permit in Arkansas, Ark. Code Ann. § 17-92-416(b).[2]

In short, Plaintiffs cannot rebut that a law regulating vertical integration without regard to residency doesn't discriminate merely because it affects some interstate firms or shifts market share. Appellants' Br. 28-31. Although Plaintiffs don't dispute that nationwide firms like Walgreens, Amazon, and Kroger can compete in Arkansas under Act 624, Plaintiffs still frame the statute as banning out-of-state

---

[2] There is an exception related to pharmacy employers; however, that exception doesn't differentiate based on interstate status. And Plaintiffs' theory that Act 624 was drafted to exempt Walmart also misses the mark. *Infra* 21-23.

Appellate Case: 25-2529     Page: 18     Date Filed: 02/25/2026 Entry ID: 5611893

competition. But that's a mischaracterization to try to sidestep *Exxon*: out-of-state firms are affected only if they choose to remain vertically integrated; Plaintiffs are not regulated or treated differently because they are out-of-state entities. And *Exxon*, along with cases applying it that Plaintiffs unpersuasively attempt to distinguish in a footnote, show Act 624 is not discriminatory just like other laws prohibiting vertical integration.

## B. Act 624 Is Not Discriminatory in Purpose.

As Defendants explained, Act 624 has a permissible purpose; its aim, like other vertical-integration restrictions, is to "protect[] the market from anticompetitive practices by vertically integrated firms that threaten to reduce competition from independent ones." Appellants' Br. 34-35. That its burden falls "solely on interstate companies" doesn't lead "to a conclusion that the State is discriminating against interstate commerce." *Exxon*, 437 U.S. at 125. Furthermore, Act 624's stated purpose and legislative history confirm the absence of a discriminatory purpose. Appellants' Br. 40-49. In response, Plaintiffs argue Act 624 has a discriminatory purpose based on text, legislative history, and other laws. All arguments fail.

*Text*. Plaintiffs seize on Act 624's reference to "anticompetitive business tactics that have driven locally-operated pharmacies out of business" to insist Act's 624's purpose is discriminatory. Appellees' Br. 32-34. But that's the inferential leap

12

*Exxon* rejected. There plaintiffs alleged protection of in-state dealers as "one, if not the main, object" of the law, and Maryland admitted the statute was intended to protect independent dealers from vertically integrated refiners. Appellants' Br. 35-36. Yet the Supreme Court affirmed the state court's conclusion that the law's "purpose was not to protect Maryland interests from out-of-state competition," but to protect independent stations and "competition within the retail" market from "control of that market by a few major" integrated firms. *Gov. of Maryland v. Exxon Corp.*, 370 A.2d 1102, 1114 (Md. 1977). Here, Plaintiffs never explain how Act 624's stated aim to "minimize conflicts of interest" and eliminate PBMs' "anticompetitive business tactics" differs in any constitutionally relevant way from the permissible purpose found in *Exxon*. Act 624 § 1(a)(3), (b). They instead wrongly attempt to cordon off *Exxon* as effects-only.

But since *Exxon* challengers have repeatedly tried—and failed—to distinguish vertical-integration restrictions on discriminatory-purpose grounds, because intentionally protecting local commerce from vertically integrated competition, rather than out-of-state commerce *per se*, is not a discriminatory purpose. *See, e.g.*, *Nat'l Ass'n of Optometrists & Opticians v. Brown*, 567 F.3d 521, 525 (9th Cir. 2009); *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 161-62 (5th Cir. 2007); *LensCrafters, Inc. v. Robinson*, 403 F.3d 798, 803 (6th Cir. 2005); *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d

493, 500-01 (5th Cir. 2001). Plaintiffs don't grapple with that doctrinal line. Instead, Plaintiffs mistakenly treat a textual reference to "locally-operated pharmacies" as reflecting an intent to discriminate against interstate commerce generally, rather than a legitimate intent to restrict vertical integration between PBMs and pharmacies that hurts independent pharmacies and consumers.[3] A desire to restrict vertical integration that leads to conflicts of interest and predatory practice, however, is not the equivalent of discriminating against interstate commerce as *Exxon* makes clear.

Contrary to Plaintiffs' argument, the text shows Arkansas enacted Act 624 to advance legitimate regulatory objectives—including preserving patient access to local pharmacy services, preventing anticompetitive vertical consolidation, and safeguarding the integrity of the State's provider-licensure framework. 2025 Ark. Acts 624 § 1(a)-(b). And these stated non-discriminatory purposes must be assumed to be the "actual purposes" because Plaintiffs have not proven circumstances show the "objectives articulated" "could not have been a goal of the legislation." *Norfolk S. Corp. v. Oberly*, 822 F.2d 388, 403 (3d Cir. 1987) (quoting *Minnesota v. Clover Leaf Creamery*, 449 U.S. 456, 463 n.7, 471 n.15 (1981)).

*Legislative History.* Plaintiffs claim Act 624's purpose is discriminatory

---

[3] Addressed below, *infra* 21-23, Plaintiffs also speculate about a supposed "Walmart carve-out," which is unmoored from the text, to argue pretext. Appellees' Br. 35-36.

because the "record is brimming with protectionist rhetoric," Appellees' Br. 2, and they point to sponsor comments about "local pharmacies," *id.* at 40, "small businesses," *id.* at 36, and "forc[ing]" Arkansans to get their prescriptions either via mail-order or CVS, *id.* at 37. But Defendants already addressed that—discussing how *Exxon* and its progeny treat such rhetoric as evidence of a permissible purpose to check abuses of integrated firms, not an impermissible purpose to target out-of-state commerce. Appellants' Br. 34-39. For example, in *Ford*, the Fifth Circuit upheld a dealer-ownership ban even while agreeing the legislature sought "to prevent manufacturers from utilizing their superior market position to compete against dealers," rejecting the claim that this purpose "discriminated against vertical organization." 264 F.3d at 500. And, as explained, *NAOO*, *LensCrafters*, and *Allstate Insurance* likewise distinguish between protecting local businesses from "commercial interests generally" (permissible) and hostility to out-of-state firms "in general" (impermissible). Appellants' Br. at 38-39. Plaintiffs' attempt to distinguish these opinions by alleging "the evidence of discriminatory effect" in *Allstate* and *LensCrafters* "was weak" is unpersuasive. Appellees' Br. 54 n.5.

The legislative history confirms what the Act says: Act 624 was motivated by a desire to "support patient access" to fairly priced drugs and services, "minimize conflicts of interest," and eliminate anticompetitive practices. Act 624 § 1. The

Appellate Case: 25-2529    Page: 22    Date Filed: 02/25/2026 Entry ID: 5611893

Court should therefore accept the stated purposes—what was actually enacted by the Legislature—as the true objectives of the Act. *See Clover Leaf Creamery*, 449 U.S. at 463 n.7, 471 n.15.

*Existing Laws.* Plaintiffs argue that because Arkansas already regulates PBM reimbursement rates and steering practices, the Legislature's decision to adopt a vertical-integration restriction was motivated by a discriminatory purpose rather than a legitimate regulatory judgment. Appellees' Br. 42. But policy disagreement over whether Act 624 is the best approach to addressing predatory practices is not evidence the Legislature acted with the *purpose* of discriminating against out-of-state actors. *Id.* at 40-48. And it was reasonable to conclude that eliminating PBMs' conflicts of interests and anticompetitive incentives would more effectively prevent steering and price discrimination than tasking a small state agency with policing opaque reimbursement practices.

Plaintiffs' assertion that Act 624 is unnecessary because Arkansas already has "laws on the books" that fully address harms cured by Act 624 misconstrues both the law and Arkansas's interests. For example, Act 624 captures Arkansas's concern about "conflicts of interest" that arise when PBMs self-deal to affiliated pharmacies. Act 624, § 1(a)(3). Plaintiffs cite no other statute addressing this broad issue. Similarly, Plaintiffs' claim that § 23-92-514(a)(2)(C) already prohibits PBMs from

Appellate Case: 25-2529    Page: 23    Date Filed: 02/25/2026 Entry ID: 5611893

steering patients to affiliated pharmacies is unsubstantiated. That provision merely forbids "unreasonably restrict[ing]" pharmacy choice; it is *not* a categorical anti-steering rule and doesn't bar steering to PBM-owned pharmacies. In short, the statutes Plaintiffs cite don't address the entirety of Arkansas's interests, let alone resolve them; therefore, they cannot be coextensive with Act 624's scope.

In any event, Plaintiffs' existing-regulation argument is nothing like the sort of hostility directed towards out-of-state actors in cases like *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003), or *SDDS, Inc. v. South Dakota*, 47 F.3d 263 (8th Cir. 1995)—where the legislative history was "brimming with protectionist rhetoric," including statements urging South Dakota to keep "imported" commerce "out" or to prevent profits from flowing to "distant corporations." *Id.* at 268; Appellees' Br. 48-49. Indeed, that Arkansas laws somewhat overlap as it relates to PBMs and pharmacies shows legislative concern for real and serious problems posed by PBMs and PBM-affiliated pharmacies, not a desire to discriminate against out-of-state entities generally. Plaintiffs have thus not shown that they are likely to succeed in proving that Act 624 has a discriminatory purpose.

## C. Act 624 Is Not Discriminatory in Effect.

Plaintiffs are also unlikely to succeed in showing that Act 624 is discriminatory in effect. As Plaintiffs concede, the district court didn't conclude that Act 624 has

an unlawful discriminatory effect. Appellees' Br. 44. They nevertheless argue that Act 624 "has a *purely* discriminatory effect" by applying "exclusively" to those "out-of-state firms." *Id.* at 44. But Plaintiffs' reasoning is circular. It assumes the geographic classification it purports to prove. Rather than identifying a statutory distinction between in-state and out-of-state firms, Plaintiffs observe which firms are burdened and then define the regulated class as "out-of-state." *Id.* But that assertion rests on a mistaken premise: that a restriction on vertical integration becomes discriminatory if the firms currently employing that structure happen to be headquartered elsewhere.

It cannot be the case that a law is discriminatory simply because firms presently engaged in prohibited conduct happen to be headquartered elsewhere. Otherwise, any neutral economic regulation could be reframed as protectionism based on the happenstance of wherever market participants are headquartered. As *Exxon* explained, the fact that a vertical-integration ban "burden[ed] … some interstate companies"—or even fell "solely on interstate companies"—doesn't establish discrimination against interstate commerce. 437 U.S. at 125-26. And while Plaintiffs rely on *Hunt*, it's distinguishable here for the same reason it was in *Exxon*: Act 624 "creates no barriers whatsoever against" non-vertically integrated entities; "it does not prohibit the flow of interstate goods, place added costs upon them, or distinguish

18

between in-state and out-of-state companies." *See id.* at 126 (distinguishing *Hunt*). For *Hunt* to be comparable, Act 624 would need to impose a burden that *only* applied to out-of-state PBM-affiliated pharmacies and not to in-state PBM-affiliated pharmacies. Therefore, that Plaintiffs fall within the statute's scope "does not lead, either logically or as a practical matter, to a conclusion that the State is discriminating against interstate commerce." *Id.* at 125.

Plaintiffs' reliance on out-of-circuit precedent is equally unavailing. In support of their narrower reading of *Exxon*, Plaintiffs point to *Cachia v. Islamorada*, 542 F.3d 839 (11th Cir. 2008), and *Family Winemakers of Cal. v. Jenkins*, 592 F.3d 1 (1st Cir. 2010). But those cases didn't involve restrictions on vertical integration. In those cases, the government banned or placed unequal burdens on large interstate businesses based purely on their size, advantaging smaller local ones. In *Cachia*, a city banned all chain restaurants. *See* 542 F.3d at 840-41; *see also Island Silver & Spice, Inc. v. Islamorada*, 542 F.3d 844 (11th Cir. 2008) (considering the same city's ban on all chain retail stores). In *Family Winemakers*, Massachusetts prohibited "large" wineries from using distribution methods available to "small" ones. *See* 592 F.3d at 4.

Unlike the law in *Exxon*, those laws didn't merely have a disparate impact on interstate commerce. Rather, they "target[ed] [businesses] operating in interstate

commerce" by banning "national chain restaurants" in *Cachia*, 542 F.3d at 843, and "interstate chain retailers" in *Island Silver & Spice*, 542 F.3d at 847, or discriminating against the large and exclusively "out-of-state wineries that produce[d] 98 percent of the country's wine" in *Family Winemakers*, 592 F.3d at 11. And though an out-of-state company could theoretically open a non-chain restaurant or shop in Islamorada, or a small out-of-state winery could sell to Massachusetts, by requiring out-of-state entities to localize their business within the town or state, those laws overwhelmingly benefited local business, "artificially limit[ing] the playing field in th[e] market in a way that enable[d] [in-state businesses] to gain market share against their out-of-state competitors." *Id.* at 12. Not so here. Act 624 treats *all* vertically integrated PBMs equally—none can operate pharmacies in Arkansas—and doesn't benefit or disadvantage PBMs based on their location or pharmacies based on their size.

Finally, Plaintiffs' theory fails to engage with how Act 624 could *benefit* out-of-state firms. Not only could Walgreens, Amazon, Kroger and other non-vertically integrated firms that are currently operating in Arkansas take over market share from vertically integrated competitors, but other out-of-state firms may join Arkansas's market to fill the vacuum left by the ban on vertically integrated pharmacies. Appellants' Br. 25-26, 33-34. That reality underscores the flaw in Plaintiffs' theory: if Act 624 can benefit some interstate firms and create new avenues for market entry by

20

out-of-state actors, it is necessarily not discriminating against interstate commerce in effect. It also shows *SDDS* is distinguishable. There, the challenged referendum operated to "exclude out-of-state trash that has a 'negative' value, thus forcing other states to bear the cost of disposing of the trash when the market would otherwise dispose of the trash in South Dakota." *SDDS*, 47 F.3d at 271. Here, Act 624 doesn't exclude out-of-state pharmacies generally; it just prohibits vertically integrated pharmacies. Accordingly, this Court should not conclude Act 624 discriminates in effect, especially when the district court didn't do so.

### D. Act 624 Does Not Create a Carve-Out Favoring In-State Firms.

As explained, Act 624 applies to all vertically integrated PBMs doing business in Arkansas, "regardless of where that PBM is headquartered or incorporated." Appellants' Br. at 3; *id.* at 26, 33. Plaintiffs nevertheless claim that Act 624 was designed to "exempt" Walmart, and thereby favor an in-state market participant, and discriminate against Plaintiffs as out-of-state firms. Appellees' Br. at 4, 13, 35, 51.

Plaintiffs attempt to manufacture this "Walmart carve-out" theory by speculating and mischaracterizing Defendants' briefing. Despite devoting eleven pages to this theory, Plaintiffs identify no evidence that Walmart owns or operates a PBM. The theory instead proceeds largely without citation, *id.* at 2, 4, 12, 36, 43, 45, 51, and relies chiefly on a single newspaper article mentioning Walmart in a passing

Appellate Case: 25-2529     Page: 28     Date Filed: 02/25/2026 Entry ID: 5611893

sentence, *id.* at 13, 35. Plaintiffs suggest "the State's explanation" below "was that Walmart's 'PBM is only serving the pharmacy's employees and those employees are likely filling prescriptions at their employer's pharmacy." Appellees' Br. 35. But Defendants never conceded Walmart has a PBM, and the out-of-context quote doesn't show otherwise.

In a section preceding the quotation, Defendants explained why Plaintiffs "carveout" theory "[wa]s unavailing." R. Doc. 54, at 20. And in the section Plaintiffs quote, Defendants were responding, in the alternative, to Plaintiffs' argument that Act 624 "purportedly favors Walmart's in-state pharmacies." *Id.* at 24. Defendants explained that the employee-plan exception applied even-handedly because it "would also apply to any out of state pharmacy with an in-house PBM for its employees' plan," and noted the exception made sense because the incentives would be different when a "PBM is only serving the pharmacy's employees and those employees are likely filling prescriptions at their employer's pharmacy." *Id.* at 24. At the preliminary-injunction hearing, Defendants explained there is no indication that Walmart owns a PBM, R. Doc. 76, at 26:17-27:6, which is corroborated by articles noting that Walmart is a company that doesn't own PBM and has negotiated

22

reimbursement agreements with third-party PBMs.[4]

Plaintiffs nevertheless fault Arkansas for not addressing this supposed "Walmart carve-out" on appeal. Appellees' Br. 4, 35. But there's no such carveout to address, and Plaintiffs cannot carry their "more rigorous" burden to demonstrate they are "likely to prevail on the merits" by relying on conjecture untethered to statutory text. *Planned Parenthood Minn., N.D., S.D. v. Rounds,* 530 F.3d 724, 732 (8th Cir. 2008) (en banc).

## III. Act 624 Satisfies *Pike*.

Because Act 624 doesn't discriminate against interstate commerce, this case "falls well outside *Pike*'s heartland," *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 380 (2023), and is not the rare case where a non-discriminatory law flunks *Pike*'s balancing test. As explained, the district court stumbled at step one because *Exxon* demonstrates that Act 624's prohibition on PBM ownership of pharmacies doesn't substantially burden interstate commerce. Appellants' Br. 49-55. And even if Act 624 imposed some burden on interstate commerce, any burden would not clearly exceed putative benefits, especially given the district court's correct conclusion that

---

[4] *See* Bruce Japsen, *How PBM Reform Could Help Walgreens and Other Retail Pharmacies*, FORBES (Dec. 18, 2024), https://tinyurl.com/vd9ejcmj; *CVS Health and Walmart Announce New PBM Pharmacy Network Agreement*, WALMART (Jan. 18, 2019), https://tinyurl.com/yc8hmj48; *NCPA Responds to Resolution of CVS Caremark/Walmart Dispute*, NCPA (Jan. 18, 2019), https://tinyurl.com/5d476tcn.

Appellate Case: 25-2529     Page: 30     Date Filed: 02/25/2026 Entry ID: 5611893

vertical integration "create[s] 'an inherent conflict of interest and an irresistible opportunity for PBMs to engage in predatory practices.'" *Id.* at 55-57 (citation omitted). None of Plaintiffs' arguments show otherwise, so they have "failed to meet [their] substantial burden" of showing Act 624 imposes an unconstitutional burden on interstate commerce. *S. Union Co. v. Mo. Pub. Serv. Comm'n*, 289 F.3d 503, 509 (8th Cir. 2002).

### A. Plaintiffs cannot show that Act 624 imposes a substantial burden.

Plaintiffs don't dispute that "*before* a court may assess the law's competing benefits," they must show Act 624 imposes substantial burdens on interstate commerce. Appellants' Br. 50 (quoting *Nat'l Pork Producers*, 598 U.S. at 383 (plurality opinion), and citing *id.* at 394 (Barrett, J., concurring in part); *id.* at 395 (Roberts, C.J., concurring in part and dissenting in part)). Accordingly, they begin by attempting to show a substantial burden. That attempt fails.

Plaintiffs first insist that Act 624 substantially burdens interstate commerce because it prohibits PBM-affiliated pharmacies from operating in Arkansas. But Plaintiffs wrongly conflate a burden on "particular interstate firms"—namely, those that are vertically integrated—with a burden on interstate commerce. *Exxon*, 437 U.S. at 127. The Commerce Clause "protects the interstate market, not particular interstate firms" and not "particular structure[s] or methods of operation." *Id.*

24

Because the *Pike* balancing test "considers only *interstate-commerce* burdens," not "*all* burdens that a state law might impose," "the costs incurred by specific interstate *businesses*—in contrast to interstate *commerce* generally—do not matter." *Truesdell v. Friedlander*, 80 F.4th 762, 774 (6th Cir. 2023) (emphases in original). So Plaintiffs' argument that Act 624 imposes a "severe" burden on interstate "PBM-affiliated pharmacies" does nothing to show Act 624 imposes a substantial burden on interstate *commerce*. Appellees' Br. 55. Moreover, that argument ignores how Act 624 leaves Arkansas's market open to non-integrated interstate firms—including big players like Walgreens, Kroger, and Amazon—and that interstate pharmacies can change their ownership structure so they can operate in Arkansas.

Plaintiffs' argument that Act 624 and similar laws will lead to "economic Balkanization" thus falls flat. *Id.* (citation omitted). Existing interstate pharmacies that are not PBM-affiliated would continue operating across state markets, and pharmacies that are currently PBM-affiliated could change their structure if they wanted to access those state markets too. And Plaintiffs' attempt to rebut three of Defendants' arguments fares no better.

First, Plaintiffs suggest Act 624 will prevent some exclusive distribution drugs from being sold in Arkansas; however, as they concede in the next sentence, manufacturers can "enter into new distribution agreements with other pharmacies" so

that doesn't happen. *Id.* at 56. And Plaintiffs overlook that Act 624 allows for limited use permits where a "limited distribution drug" would "otherwise [be] unavailable in the market." Ark. Code Ann. § 17-92-416(d)(2)(A)(ii).

Second, Plaintiffs insist Act 624 will have a bigger impact on the pharmacy market in Arkansas than the law had on the market in *Exxon*. But even if true, Plaintiffs fail to explain how that shows the Act substantially burdens interstate commerce. As explained, Act 624 could simply cause some pharmacies to alter their corporate structure or cause some pharmacy "business to shift from" Plaintiffs to other interstate suppliers, *Exxon*, 437 U.S. at 127, like Walgreens, Amazon, or Kroger, Appellants' Br. 33-34.

Third, Plaintiffs acknowledge Act 624 allows "out-of-state pharmacies to continue to operate" in Arkansas; however, they insist that doesn't change the substantial burden on the impacted firms that are "*exclusively*" "out-of-state firms." Appellees' Br. 57. But Plaintiffs again wrongly conflate a burden on particular interstate companies with a burden on interstate commerce. *Supra* 24-25. And they ignore that the law in *Exxon* "had a 100% disparate impact on out-of-state companies" yet that didn't show a discriminatory effect or a substantial burden on interstate commerce. *Truesdell*, 80 F.4th at 771 (discussing *Exxon*); *see id.* at 775 (harm to "'particular firms' in interstate commerce" does "not show substantial harm to interstate

commerce generally" (quoting *Nat'l Pork Producers*, 598 U.S. at 383 (plurality opinion) (citation modified)). Nor does Plaintiffs' assertion that in-state pharmacies, rather than out-of-state pharmacies like Walgreens, Amazon, and Kroger, "will take the lion's share of the market" currently served by PBM-affiliated pharmacies prove that Act 624 will substantially burden interstate commerce. Appellees' Br. 57. For one, the assertion is unsupported. Plaintiffs cite only an attorney's assertion at the preliminary-injunction hearing, who vaguely relied on assertions in briefs, not evidence. R. Doc. 76 at 21:9-16.[5] For another, Plaintiffs cannot explain how Act 624 allegedly "incentiviz[es] consumers to shift market share" to in-state rather than out-of-state pharmacies. *Truesdell*, 80 F.4th at 771; *see id.* at 775.

Because Plaintiffs fail to show a substantial burden, their *Pike*-balancing argument fails at the outset. This Court therefore need not even proceed to balancing in this case.

### B. Plaintiffs cannot show Act 624's burdens on interstate commerce clearly exceed its putative benefits.

Plaintiffs' *Pike*-balancing argument fails at the second step too: Plaintiffs cannot show that Act 624's burdens on interstate commerce clearly exceed its putative benefits. Appellants' Br. 55-57. Because vertical integration creates "an inherent

---

[5] The district-court briefs also seem to contain unsupported assertions on this point. *See* R. Doc. 14 at 44-45.

Appellate Case: 25-2529     Page: 34     Date Filed: 02/25/2026 Entry ID: 5611893

conflict of interest and an irresistible opportunity for PBMs to engage in predatory practices," eliminating PBMs' "irresistible" incentive to engage in such predatory practices is a more effective way of advancing Arkansas's legitimate local interests than trying to police the predatory practices at the backend with limited state resources. Add. 2; App. 776; R. Doc. 73, at 2.

In response, Plaintiffs seek to shift the burden to Defendants, arguing Arkansas must "substantiate that the benefits may be real," citing a case that was tried on stipulated facts, *R & M Oil & Supply, Inc. v. Saunders*, 307 F.3d 731, 734 (8th Cir. 2002), and a case decided on summary judgment, *Cotto Waxo Co. v. Williams*, 46 F.3d 790, 792 (8th Cir. 1995). Appellees' Br. 57. But Plaintiffs have the burden of making a "clear showing" they are entitled to a preliminary injunction, including "likel[ihood] [of] succe[ss] on the merits." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). That means Plaintiffs must show Act 624's burden on interstate commerce "is clearly excessive in relation to the putative local benefits," *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Plaintiffs failed to carry that burden.

Plaintiffs just assume Act 624's benefits are limited because Arkansas has other laws that "provide tools to regulate anticompetitive conduct by PBMs." Appellees' Br. 58. But those tools have not been completely effective, and States can take a belt-and-suspenders approach to protect consumers. *See* Appellants' Br. 4-9

28

(discussing how FTC reports document real harms of PBM-pharmacy vertical integration); *cf. Exxon*, 437 U.S. at 144 (Blackmun, J., dissenting) (disagreeing the law advanced the State's interest in protecting consumers from "predatory pricing or inequitable allocation" because those harms were already "prohibited by both state and federal law"). In any event, Arkansas's concerns are "not groundless," *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92, (1987), and the Commerce Clause doesn't prohibit Arkansas from taking prophylactic measures to remove "inherent conflict[s] of interest" and "irresistible opportunity for PBMs to engage in predatory practices," Add. 2; App. 776; R. Doc. 73, at 2, rather than waiting and playing whack-a-mole when new anticompetitive practices emerge.

Plaintiffs fail to show this is the rare case where this Court should "second-guess" the lawmakers' judgments "concerning the utility of legislation." *CTS*, 481 U.S. at 92; *accord Truesdell*, 80 F.4th at 774; *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1156 (9th Cir. 2012). Accordingly, the district court erred by holding that Act 624 failed the *Pike* balancing test.

## IV. The Remaining Factors Weigh Against Preliminary Relief.

If the Court addresses the remaining factors, it should conclude the district court erred in assessing those factors too. Plaintiffs are wrong that a preliminary injunction causes Defendants no harm. As the Supreme Court recently reaffirmed in

Appellate Case: 25-2529     Page: 36     Date Filed: 02/25/2026 Entry ID: 5611893

*Trump v. CASA, Inc.*, "[*a*]*ny time* a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." 606 U.S. 831, 861 (2025) (emphasis added) (citation omitted). This harm doesn't evaporate with a district court's incorrect determination that Plaintiffs will likely prevail on their constitutional claims.

Plaintiffs are likewise wrong to ignore that "[t]he balance-of-harms and public-interest factors 'merge when the Government'—or, in this case, a state official in his official capacity—'is the [nonmoving] party.'" *Eggers v. Evnen*, 48 F.4th 561, 564-65 (8th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Plaintiffs purport to know what's in the public interest for Arkansans, Appellees' Br. 60-61, but it is Defendants who represent their interests. What's in the public interest of Arkansans is to have their democratically enacted law enforced and to be protected from PBMs' predatory practices. *See* Appellants' Br. 3-9; Amici Curiae Br. 2-10; Ted Okon Decl. 1-3.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's preliminary-injunction order.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

AUTUMN HAMIT PATTERSON
  Arkansas Solicitor General

M. ERICA CROUSE
  Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
101 West Capitol Ave.
Little Rock, AR 72201
(479) 441-0165
Erica.Crouse@arkansasag.gov

*Attorneys for Appellants*

Appellate Case: 25-2529    Page: 38    Date Filed: 02/25/2026 Entry ID: 5611893

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,500 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Equity, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

/s/ *M. Erica Crouse*
M. Erica Crouse

## CERTIFICATE OF SERVICE

I certify that on February 24, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

/s/ *M. Erica Crouse*
M. Erica Crouse